This suit involves the right of J. S. Scott, appellee, to recover compensation under the Workmen's Compensation Law (Rev.St. 1925, arts. 8306-8309) for accidental injuries received in the course of an alleged employment by the Gulf Mortgage Company, a subscriber, insured by Federal Surety Company, appellant.
The suit was by appellant to set aside an award for compensation, made by the Industrial Accident Board in favor of appellee at the rate of $20 per week for 200 weeks, less attorney's fee in favor of White 
Yarborough, his attorneys.
Appellee answered, and in a cross-bill also sought to set aside the award, alleging, in substance, that he sustained the accidental injuries in the course of employment as a carpenter by the Gulf Mortgage Company; that the company was an employer of labor within the meaning of the Compensation Act, and carried a policy of compensation insurance with appellant; that his injuries resulted in total permanent incapacity, and at the time he was earning an average of $44 per week; therefore was entitled to compensation at the rate of $20 per week for the full period of 400 weeks, for which he prayed judgment.
In its replication, appellant denied that appellee received any injury while in the employ of Gulf Mortgage Company, but, if injured at all, was employed by and working for the Gulf Building Company; that G. A. Harding, president of the Gulf Mortgage Company, reported appellee's injuries to the Industrial Accident Board, as having been received in the course of his employment by the Gulf Mortgage Company, and, relying up on the truth of this report, paid appellee 3 weeks' compensation, but, upon ascertaining *Page 158 
that appellee was not in fact employed by or working for the Gulf Mortgage Company, but instead was in the service of the Gulf Building Company, appellant notified the Industrial Accident Board that it would discontinue payments.
The case went to a jury on special issues, and their answers are to the effect that on June 18, 192S, while employed by the Gulf Mortgage Company, appellee sustained accidental injuries in the course of employment, resulting in his being permanently incapacitated; that his average daily wage during the year immediately preceding the date of his injuries was $7.50 per day; and the jury also found facts fully justifying the rendition of a lump sum judgment in his favor.
Upon these findings the court rendered judgment for appellee for $4,255.90, with interest, also in favor of White Yarborough, his attorneys, for $2,127.95, with interest, from which this appeal is prosecuted, and by appropriate assignments, based on the refusal of the court to instruct a verdict in its favor, the refusal of the court to sustain objections urged to the submission of certain special issues, and the refusal of the court to set aside the verdict of the jury, appellant challenges the sufficiency of the evidence to sustain the verdict and judgment.
This contention presents the controlling question and challenges the sufficiency of the evidence to sustain the finding of the jury, to the effect, that appellee, when injured, was employed by and at work for the Gulf Mortgage Company.
The rule universal, applicable here, is that jurors are the exclusive judges of facts, the credibility of witnesses, and the weight to be given their testimony, and, in determining such a question, the evidence must be viewed in the light most favorable to the verdict. We will therefore look no further than to see if the evidence, favorable to appellee, justified the submission and warranted the findings of the jury; if so, the case must be affirmed. This inquiry will necessitate the marshaling of facts somewhat at length.
The Gulf Mortgage Company was chartered January 5, 1927, with authority to accumulate and loan money. Its charter was subscribed by G. A. Harding and M. I. Harris and their wives; the authorized capital stock being $10,000, which was subscribed by the husbands in the sum of $4,800 each, and by the wives in the sum of $200 each. Harding was president, Harris was secretary and treasurer, and the four constituted its board of directors. The company, however, did not engage in the loan business at all, but contracted for and erected buildings and improvements, and in pursuit of this purpose employed appellee, a carpenter, who worked at intervals on jobs for which it had contracts. On June 11, 1928 (Saturday), Mr. Harris, who employed labor and secured materials for the erection of buildings, called appellee over the telephone, stating in effect, that the Gulf Mortgage Company was speaking, that they had subcontracted a job for the carpenter's work on a house and wanted appellee to check the plans and figure the costs. Appellee figured on the job during Saturday and Sunday, and on Monday following went to work as carpenter on a house being built for a Mr. Dean at 3410 Pondrom street, and also served as foreman and timekeeper on the job. At the time of this employment, appellee was ignorant of the existence of the Gulf Building Company, and did not ascertain this fact until after he was injured. On Monday, June 18, 1928, while at work, appellee fell from a defective scaffold, broke the bones at the elbow in his left arm, injured his head, side, face, and had several teeth knocked out.
At the time of this happening, the mortgage company held a compensation policy issued by appellant, effective for twelve months from October 11, 1927, the advanced premium, computed upon remuneration being paid employés by subscriber, was $33, and subject to adjustment monthly, the policy stipulating in this respect that, at all reasonable times during the policy period, appellant had the right to examine the books of the mortgage company to determine the amount of remuneration paid employés, and, if such examination revealed that the earned premium was greater than the advanced premium paid, the mortgage company was obligated to pay appellant the additional amount, but, if less, appellant was obligated to return to the mortgage company the unearned portion of the premium, but, in any event, it was entitled to retain the minimum premium of $33. There is evidence to the effect that appellant's auditor visited the office and examined the books of the mortgage company for the purpose of adjusting the premium, as provided in the policy, and, as the policy was kept alive, we must assume that the auditor satisfied himself that the mortgage company continued to pay remuneration to employés.
Notices were duly served on the employer, the insurer, and the Accident Board, in regard to appellee's injuries. The notice to the Accident Board was given by G. A. Harding, who, as president of the Gulf Mortgage Company, reported that appellee was injured in the course of his employment with said company. The Accident Board entered an order to the effect that the Gulf Mortgage Company was a subscriber to the Employers' Liability Law, by virtue of a policy of compensation insurance carried with the Federal Surety Company (appellant), and had in its employ J. S. Scott (appellee), who sustained injuries June 18, 1928, while engaged in the course of his employment; that his average weekly wage was $46.15; thereupon awarded him the maximum sum of $20 per week for 200 weeks. *Page 159 
Other implications and circumstances, favorable to the verdict, will outcrop later in the discussion, but we are of opinion that, even standing alone, the facts detailed above justified the submission of the issues to the jury, and sustain their findings to the effect that appellee when injured was employed by and working for the Gulf Mortgage Company.
The record, however, discloses further that the Stewart Title Company of Dallas, with whom the mortgage company transacted its title business, objected that the mortgage company was not authorized under its charter to do a contracting and building business, and for a time the company took building contracts in the name of individuals in its office, but later the parties — that is, Harding and wife and Harris and wife — on September 28, 1927, procured a charter for the Gulf Building Company, with authority to contract for the erection, construction, or repair of buildings or improvements. The authorized capital stock of this corporation was $5,000, which was subscribed by the parties in relative amounts the same as was their subscriptions to the capital stock of the Gulf Mortgage Company. These corporations had the same directors; that is, Harding and wife and Harris and wife. Harding was president of both, and Harris was secretary and treasurer of both.
The contract for the erection of the building for Dean and wife, at 3410 Pondrom street, on which appellee was working when injured, was in the name of the Gulf Building Company, contractor; all material for the job was purchased in its name and was billed to it, and the payroll, the only one receipted by appellee for wages earned on this job, was made out in the name of Gulf Building Company. After the building company was chartered, the bank account standing in the name of the mortgage company was changed to that of the building company, and a similar change of names was made in the telephone book.
After appellee was injured, appellant assumed liability at first and paid him four weekly installments of $20 each, but later served written notice on the Industrial Accident Board that it had suspended payments because a controversy had arisen as to whether or not the insured, the Gulf Mortgage Company, was actually doing work on the building at the time appellee was injured.
When Harris employed appellee to work on this job, the name of the Gulf Mortgage Company was on the office door, and he was furnished the same time book of the mortgage company previously used by him on other jobs. These companies were chartered and owned by the same individuals, had the same officers, occupied the same office, and used the same books — in fact, it seems that the business was conducted in their names interchangeably, and more as a partnership than as corporations, as no minutes were kept and no dividends were declared or paid as such, but profits were divided. Mr. Harding summed up the relation of these corporations as follows: "The Gulf Mortgage Company and the Gulf Building Company was all in the same office and run by the same people, the same officers and the same managers, and I would say the same business, and the same transactions."
Mr. Harris summarized the situation as follows: "* * * I couldn't say whether at the time of the injury the Gulf Mortgage Company was doing the job indirectly or not and was getting the profit out of it. We generally handled the profits in our office and it did not matter how it come in; we went a circuitous route to carry out our purpose. We carried on our business inside to suit ourselves and operated these companies together as it was convenient, and we never differentiated between them, because we received all of the profits and were responsible for all of the obligations either directly or indirectly. If we took the profits in our own name, we turned in the profits to either one, the Gulf Mortgage Company or the Gulf Building Company. We do not get any benefit other than through our corporation and the same way operating on the bank account. If we had the profits coming in, we had one bank account over there, and the profits coming in from both sources through different corporations it would all go in the same bank account."
Mr. J. E. Whitehead, president of the Midland Building Loan Association, that financed this job for the contractor, and became subrogated to the mechanic's lien on the property, testified: "* * * The Midland Building Loan Association financed the construction of a building on Lot 3, Block 1559, Warren addition (the property in question). We financed either the Gulf Mortgage Company or the Gulf Building Company, one or the other, in constructing that building * * * I have some of the payrolls for labor performed on that building, covering June 1928. Those were brought up to us by either the person furnishing the material or by the Gulf Building Company, or the Gulf Mortgage Company, whoever was doing it. There seems to be a similarity of names, and I don't recall that we made or had any such distinction over there, or knew of any such a distinction."
But appellant stresses the fact, and argues that, because appellee signed the payroll, bearing on its face the notation, "Gulf Building Company — Pondrom Street job," he knew the Gulf Building Company was having the building constructed. Appellee signed only one payroll for wages earned on this particular job; this was prepared in the office, was on a regular blank form, divided into appropriate spaces for the names of laborers, the days labored, the wages per day, and the total amount due, and a blank space for the *Page 160 
signature of the laborer receipting for wages. There is no evidence that the caption of the payroll was read to or by appellee, and surely there was no occasion for him, in receipting for his wages, to read its caption. We are of opinion, therefore, that the evidence justified the submission of the question, and that the answer of the jury in favor of appellee was warranted; therefore, we overrule all assignments and propositions that challenge the sufficiency of the evidence to sustain the verdict and judgment.
Appellant also contends that the verdict of the jury was insufficient to sustain a lump sum judgment, in that there was no finding as to the amount or rate of discount that should have been allowed. The allowance of a reasonable discount was a mere incident to the judgment, and, as appellant failed to request a finding on the subject, we must assume that the facts found by the court support the judgment. Ormsby v. Ratcliffe,117 Tex. 242, 1 S.W.2d 1084. The rate of discount, 6 per cent. allowed in this case, was, in our judgment, reasonable. In fact, appellant does not object to the discount allowed as being unreasonable; the objection being that the question was not submitted to or determined by the jury. Lumbermen's, etc., Ass'n v. Behnken (Tex.Civ.App.) 226 S.W. 154-157; same case affirmed by the Supreme Court, 112 Tex. 103, 246 S.W. 72-76, 28 A.L.R. 1402; Herzing v. Texas, etc., Ass'n (Tex.Com.App.) 17 S.W.2d 1046.
Appellant also assigned error on the definition given of total incapacity, as follows: "The phrase `total incapacity,' as used in the court's charge does not imply an absolute incapacity to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to produce and retain employment is ordinarily regarded as totally incapacitated."
There was no error in this definition. Similar definitions given by trial courts in a number of compensation cases have been approved by our appellate courts. See Employers', etc., Corp. v. Williams (Tex.Civ.App.)293 S.W. 210; Southern Surety Co. v. Lacoste (Tex.Civ.App.) 7 S.W.2d 197; Texas, etc., Ass'n v. Wonderley (Tex.Civ.App.) 16 S.W.2d 386, 390; Lumbermen's Recip. Ass'n v. Anders (Tex.Civ.App.) 292 S.W. 265; Standard, etc., Co. v. Williams (Tex.Com.App.) 14 S.W.2d 1015.
While appellee was testifying, he was asked by his counsel for whom he was working at the time he was injured. Appellant objected to this question, on the ground that it called for a conclusion; the objection was overruled, and the witness testified that on the date mentioned he was working for the Gulf Mortgage Company, to which appellant excepted, and has assigned error. We do not think the assignment is well taken, for, even if the answer of the witness was a conclusion, he stated the facts upon which the same was or could have been based, to the effect that he was employed on this particular job, in the name of the mortgage company, by Mr. Harris, its field manager.
Appellant also complains of the action of the court in admitting over its objections the testimony of G. A. Harding, president of both the Gulf Mortgage Company and the Gulf Building Company, to the effect, that these companies occupied the same offices, were under the same management, used the same books, and transacted the same business; also complains of the admission of the testimony of M. I. Harris, secretary and treasurer of both companies, to the effect, that everything they (the two corporations) had was in one book; that they paid premiums (for the insurance in suit) and employés of both companies, and stated the method of conducting the business and dividing the profits. The testimony of the witnesses was objected to, on the ground that it was irrelevant and immaterial. We do not think so. Appellant having shown by the testimony of Mr. Harding the relationship of these two companies, we think appellee was entitled to cross-examine him fully on the subject. We also think the testimony of Mr. Harris was in rebuttal, and besides was relevant on the main issue of fact; that is, whether appellee was employed by one or the other of these companies.
We have carefully considered all assignments and propositions, and, finding no reversible error, the case will be affirmed.
 Affirmed. *Page 311