**TRADERS & GENERAL INS. CO. v. BURNS.**

**No. 13773.**

Court of Civil Appeals of Texas. Fort Worth.

May 27, 1938.

Rehearing Denied June 24, 1938.

Lightfoot, Robertson & Gano and Dan P. Johnston, of Fort Worth, for plaintiff in error.

Leo Brewster, Harris Brewster, and Garland Flowers, all of Fort Worth, for defendant in error.

SPEER, Justice.

This appeal involves certain provisions of the Workmen's Compensation Act, contained in Articles 8306 et seq., Rev.Civ.St., and amendments thereto, Vernon's Ann. Civ.St. art. 8306 et seq.

Plaintiff, A. V. Burns, was the employee, defendant, Traders & General Insurance Company, was the carrier of compensation insurance, and Worth Mills, Inc., was the employer and subscriber.

Plaintiff alleged all necessary jurisdictional grounds, and that for several years he had been in the employ of Worth Mills, Inc., until on June 23rd, 1936, while in the discharge of duty as an employee, he received an injury from which he became totally and permanently incapacitated to perform manual labor. That he was unloading bales of cotton from a box car at his employer's plant, and in an effort to pull a bale of cotton with hooks, from one position to another, the hook slipped or broke, causing him to fall backward out of the box car onto the ground, injuring his head, neck, shoulders, chest and back. Allegations concerning the amount of compensation claimed were based upon primary and alternative pleas respectively, that he had worked for a year prior to his injuries, and if not, then others in that vicinity had engaged in similar work for that period, and, if mistaken in this, a fair and equitable wage rate to all parties was $13.90 per week. Further rather unusual alternative allegations were made, to the effect that if he was mistaken in his claim that he was permanently and totally incapacitated, then by reason of his injuries he had suffered temporary, total disability, and permanent partial disability; further in the alternative, if· mistaken in

the last allegation, because of his injuries, he had sustained permanent partial disability, and further alternatively stated he had suffered temporary partial disability. Allegations were made upon which the right of a lump sum settlement was asked.

The defendant answered by general demurrer, special exceptions, a general denial and plea in cross action against plaintiff for the recovery back of certain weekly compensation payments theretofore made by it through error and mistake.

A jury trial was had; special issues were submitted by the court, a verdict rendered and the judgment was entered for plaintiff in lump sum, the amount being based upon 60 per cent of the average weekly wage found by the verdict. Motion for new trial was overruled and this appeal perfected by writ of error.

The answers to issues submitted were all favorable to plaintiff and against the defendant. The issues and their answers constituted a verdict substantially as follows: Upon separate inquiries it was found that plaintiff sustained accidental injuries on June 23rd, 1936, while in the course of his employment, to his head, chest and shoulder; that on the date last mentioned plaintiff was totally incapacitated, as a result of the injuries sustained, and that his total incapacity was permanent; the length of time of such total incapacity since June 23rd, 1936, to the date of trial was 47 weeks and four days; he will suffer total incapacity in the future for "as many weeks as he lives"; he has suffered no partial incapacity as a result of the injuries sustained; he will not suffer partial incapacity in the future as a result of his injuries; a manifest hardship and injustice will result to plaintiff if the compensation to plaintiff is not paid in a lump sum; the plaintiff had not worked at Worth Mills, Inc., for substantially the whole year prior to the date of the accident, nor had any other employee of the same class done so in the same or similar employment in the same or a neighboring place; $13.90 per week was the average weekly wage for plaintiff, based upon what is fair and just to both parties.

Special Issue No. 26 reads: "Do you find from a preponderance of the evidence that any injury or injuries plaintiff, A. V. Burns, had received prior to June 23rd, 1936, did not contribute in any degree to the result, if any, of any injury or injuries, if any, he may have sustained on June 23rd, 1936, if you have found he was injured on the last named date?" This issue was answered: "They did not." By the verdict, it was further found that the policy of insurance carried by defendant was in force on June 23rd, 1936, and that it covered plaintiff, A. V. Burns; that defendant had previously paid to plaintiff, in compensation as a result of the injuries sustained, at the rate of $8.34 per week. Issues Nos. 33 and 34 are the subject of complaint by defendant and they with their answers read: "Question 33: Do you find from a preponderance of the evidence that the focal infection of the plaintiff, A. V. Burns, brought about by the abscessed teeth of plaintiff, was not the sole cause of any disability, if any, he may have suffered subsequent to June 23rd, 1936? Answer 'It was the sole cause' or 'It was not the sole cause,' as you find the facts to be." The answer was: "It was not the sole cause."

"Question 34: Do you find from a preponderance of the evidence that the injury or injuries sustained by the plaintiff, A. V. Burns, at any time prior to June 23rd, 1936 was not the sole cause of any disability, if any, the plaintiff may have suffered since June 23rd, 1936, if in fact he did suffer any disability? Answer 'It was the sole cause' or 'It was not the sole cause,' as you may find the facts to be." This was answered: "It was not the sole cause."

There are 164 paragraphs in defendant's motion for new trial; many of these paragraphs contain more than one assigned reason why the court should set aside its judgment and grant a new trial. With candid frankness these are brought forward in its brief by twenty-seven assignments of error, each of which is admirably clarified by appropriate propositions relied upon. We pause here to say both parties to this appeal have furnished us with thorough and logically arranged briefs, for the like of which appellate courts are always grateful. The ever increasing volume of litigation growing out of the Workmen's Compensation Act has brought before our courts almost every conceivable issue that could arise under its construction, and we believe the weight of authority thus expressed is against the contentions of defendant.

■ Defendant's first three propositions are based upon the court's refusal to submit an issue inquiring of the jury if any

part of plaintiff's disability was attributable to the focal infection caused by his admittedly abscessed teeth. The objection to the charge on this point, made before its submission, was in effect that the testimony showed plaintiff's disability was attributable to some extent, degree or per cent to the condition of his teeth, and the court was asked to submit the question to the jury. It is not contended that an issue was prepared by defendant and its submission requested. The only issue submitted with reference to the focal infection from bad teeth was Number 33, quoted above, which inquired if that infection was the sole cause of plaintiff's disability. But the contention is that Issue No. 33 being an incorrect one, the objection to it made at the time was sufficient to entitle defendant to have it reviewed on appeal. We think defendant brings itself within the rule announced in the case of Gulf C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183. In that case, Judge Cureton, speaking for the court, discussed Articles 1971 and 1985, Vernon's Sayles' Ann.Civ.St.1914, which relate to issues arising, and there laid down the rule in this language: "These two statutes were enacted to accomplish the same purpose, and we think a failure to submit any particular issue under either statute can be reviewed on appeal only where the record shows a special charge was tendered on that issue. But in the instance of a defective or erroneous charge on a subject or issue which the court has undertaken to charge upon, the objections required by article 1971 take the place of special charges and render it unnecessary that the latter be tendered."

We think the proposition urged by defendant presents an erroneous theory, and that under the decisions of our courts, the special issue No. 33 was correct. If plaintiff's incapacity was caused solely by his infected teeth and not from the accidental injury, then he could not recover compensation, for the reason compensation insurance does not cover diseases. There must be a causal connection between the accidental injury and the disability for which compensation is provided. Travelers' Ins. Co. v. Peters, Tex.Com.App., 14 S.W.2d 1007. There was a sharp conflict between the testimony of the doctors offered by both parties. Some testified that in their opinion if plaintiff had ever been incapacitated to work as a result of the injury sustained in the fall, he had entirely recovered from it at the time of the trial and that his disability then was from the results of infection from his teeth; others testified that his disability was occasioned by the accident and that the disease was contributing thereto. Under such a conflict in the evidence, in the view we take of the law applicable, it was proper to submit to the jury an inquiry of whether or not plaintiff's disability was occasioned solely by the focal infection because of his teeth.

Our courts have many times held that although an employee is suffering with disease when he receives an accidental injury, covered by compensation insurance, he may recover even though the pre-existing disease contributed to the injuries and incapacity sustained. In the case of Millers' Indemnity Underwriters v. Schrieber, Tex.Civ.App., 240 S.W. 963, writ refused, the injured employee was suffering with an advanced case of syphilis and fell from a scaffold, receiving injuries therefrom, and, although it was further found as a fact that the disease with which he was suffering contributed to his injuries sustained by the fall, it was held this fact would not deprive him of his right of recovery for the accidental injuries. In Texas Emp. Ins. Ass'n v. Jimenez, Tex. Civ.App., 267 S.W. 752, writ dismissed, it was said (page 755): "Under the Act compensation may be recovered for the death of an employe which was caused concurrently by a disease and by injuries received in the course of his employment." In Texas Emp. Ins. Ass'n v. Parr, Tex.Com. App., 30 S.W.2d 305, it was held that an employee injured as a direct result of his employment may recover compensation although disease had impaired his capacity to work. In reasoning upon the point, the court said (page 308): "An injury may be caused by an accident, although no injury would have been suffered but for the existence of disease, which was aggravated by the accident, but it is the accident, resulting in an injury, for which the law gives compensation, measured, of course, by the average weekly wage of the injured employee." See also Texas Emp. Ins. Ass'n v. Ford, Tex.Civ.App., 93 S.W. 2d 227, writ dismissed; Travelers Ins. Co. v. Johnson, Tex.Civ.App., 84 S.W.2d 354, writ dismissed.

Special Issue No. 33 inquired if the focal infection caused by diseased teeth was

the sole cause of plaintiff's incapacity, and it was answered as above shown. By answer to Special Issue No. 10a, it was found plaintiff's incapacity was the result of an injury received on June 23rd, 1936; with this finding, even though the issue requested by defendant inquiring if the focal infection contributed to any extent to his incapacity had been given, and an affirmative answer returned, it would have presented no defense to compensation, under the authorities above cited. In this connection it is well to note section 12c of Article 8306, R. C.S., wherein it is provided that if an employee has suffered a previous injury to one which results in incapacity, when both such injuries contribute to the incapacity, the carrier of insurance shall be liable only for the compensation complainant would have been entitled to for the last injury had the first not occurred. It was developed by the evidence that plaintiff had sustained two minor injuries previous to June 23rd, 1936; by issue 26 the jury was asked if it found that any injuries sustained by plaintiff prior to June 23rd, 1936, did not contribute in any degree to the result of the injuries sustained on the last mentioned date, and the answer was: "They did not."

The statutory provision above mentioned seems to be perhaps the only type of previous condition which may be offset against any percentage or degree of incapacity sustained by an employee when covered by such a policy. Believing as we do that the issue contended for by defendant would not have shed any light upon the question involved, there was no error shown by the court's refusal to submit it.

We consider the fourth assignment, the crucial point in this appeal. In it is presented a challenge of the court's action in permitting Dr. Withers to testify and give his expert opinion as to plaintiff's condition and extent of his injuries, as they affected his capacity to labor. His testimony was objected to upon the ground that it appeared his evidence was based in whole or in part upon what plaintiff had told him, while the witness was primarily qualifying himself as an expert witness to testify in the case.

 We are not unmindful of the rule in such cases, announced in Texas Emp. Ins. Ass'n v. Wallace, Tex.Civ.App., 70 S. W.2d 832, and others of like kind, which tend to support defendant's contention, but in those cases they do not go as far as is presented by the evidence in the instant case. It is fundamentally true that a plaintiff cannot offer in evidence his own statements, by witnesses to whom he has talked; this would violate the rule of hearsay testimony. But we are not inclined to go so far as to say that because a doctor procures from the patient a history of his ailments, or a history of how he received an injury from which he claims to be suffering, and with that in mind examines, observes, diagnoses the case and treats the patient, and thereby verifies the truth or falsity of the statements received, the doctor will, for that reason, be precluded from giving his expert opinion about his patient's condition and his afflictions. Dr. Withers testified that the first time he saw plaintiff he got from him a complete history of what had happened; he had plaintiff return the next day and questioned him along the same lines, to ascertain if he would get similar answers; he said this was the usual procedure followed by physicians; he examined plaintiff carefully; took his temperature, found his heart-beats rapid but not to an alarming extent; believes he made a spinal puncture; found him nervous, and unsteady, in his locomotion; observed him at times away from the office when the patient did not know about it; from his examinations he found plaintiff had a severe concussion of the brain; that from examinations the witness said he knew plaintiff had an injury to his brain and nervous system; that in the witness' opinion, plaintiff was wholly incapacitated to do manual labor. Reverting to what Dr. Withers said about having inquired about the history of the case, he testified that it was necessary in any case to ascertain a knowledge of its history, to properly diagnose it. The doctor was asked this question: "Now, your opinion, Dr. Withers, as to his (plaintiff's) condition now and his ability to work now, and the permanency of that condition, is based on the history of the case that he gave you, and upon the subjective symptoms that you found?" The answer was: "Based upon that, and the complete examination and the history of these cases like this." The record before us also discloses that Dr. Withers saw and treated plaintiff for months before any lawyer in the case ever discussed the case with him; he said without a knowledge of the history of plaintiff's trouble he would not have been positive as to what was the matter with him, but the things he observed, independently of what

plaintiff told him, would lead him to know that plaintiff had some injury to the brain. That the plaintiff, in his judgment, was totally incapacitated to labor and that his incapacity was permanent. There is nothing in the record to indicate that Dr. Withers was called upon to examine the plaintiff with the view to making himself an expert witness in plaintiff's case; the plaintiff testified he consulted the doctor with a view to being treated by him and that Dr. Withers did so treat him, as testified to by the doctor. We think the testimony was admissible and that the court did not err in refusing to instruct the jury not to consider it. Pullman Palace Car Co. v. Smith, 79 Tex. 468, 14 S.W. 993, 13 L.R.A. 215, 23 Am.St. Rep. 356; Texas & N. O. R. Co. v. Churchill, Tex.Civ.App., 74 S.W.2d 1030, writ dismissed; Walker v. Great Atlantic & Pacific Tea Co., Tex.Sup., 112 S.W.2d 170. In the last cited case a distinction is drawn between such cases as the one before us and those in which physicians are called solely for the purpose of qualifying themselves to testify as expert witnesses in a pending or contemplated lawsuit. That condition does not exist here, and the assignment is overruled.

The significance of the testimony given by Dr. Withers above discussed is emphasized by the fact that defendant's fifth to thirteenth assignments are based upon the theory that without the testimony of Dr. Withers there is little or no substantial evidence to support the verdict of the jury; and that even to permit the testimony of Dr. Withers to remain in the record, the overwhelming preponderance of the evidence is against the verdict. Defendant frankly states in its brief concerning these points: "The question at bar is whether or not the answers of the jury to such issues are so clearly against the overwhelming weight of the testimony as to show passion and prejudice, or some other improper motive."

It would unnecessarily prolong this discussion to attempt to enumerate the testimony of the respective doctors who were before the court as witnesses. Nor do we assume to give more credence to the judgment of one than to another; so far as the jury knew, or the courts may know, they were all sufficiently skilled and equipped to give expert testimony upon the subject under consideration. They differed materially as to plaintiff's condition at the respective dates upon which they each either treated or examined him. Dr. Havard was offered as a witness by defendant; he said he saw plaintiff on June 23rd, 1936 (this was the date he claims to have been injured), and got an explanation of how and where plaintiff claimed to have been injured; he said the patient complained of injuries to his chest and shoulder; made X-ray pictures of his chest and shoulder, but found no bone fractures; that injuries to muscles, tissues, ligaments and the like would not be shown in such a picture; he found a bruise on the back of the left shoulder; the doctor believed the injuries found on plaintiff's body as a result of the accident would disable him for a week or ten days; he treated plaintiff nine or ten days, strapping his shoulder and chest with bandages, and plaintiff quit calling for treatment because he claimed he was not improving any.

Dr. O'Bannon, a witness for the defendant, testified in substance that he treated plaintiff at the Harris Clinic, where thorough examinations were made, after learning from him of a fall of several feet from a box car. The doctor said plaintiff was in the hospital twice he was sure, for treatment; he found badly infected teeth and had them removed; that such infection was dangerous to a man's whole system; it could produce many bad results; being asked if he would attribute any condition he found in plaintiff to any injury, he said: "Well, we would at least attribute part of it to injury."

Doctors Johnson and Snyder also testified at the instance of defendant; they considered plaintiff was not incapacitated to perform labor; that such trouble as he claimed to be having was attributable to the focal infection caused from bad teeth, and in fact they believed he was feigning parts of his apparent nervousness; that he was letting his imagination get the better of him, and if he would quit worrying and forget his troubles he would entirely recover. Certainly not all of the material parts of the testimony have been mentioned, but only enough to show that there was a causal connection shown between plaintiff's accidental injury and his incapacity to labor. These facts were submitted to the jury and were resolved against the defendant, and there being substantial testimony to support the finding, we cannot disturb it upon the grounds urged.

■ Defendant's fourteenth and fifteenth assignments assert that it was error for the court to instruct the jury to answer certain issues by the use of prescribed words, adding, "as you find the facts to be." It is claimed such instruction contradicts the previous expression in the issue to answer from a preponderance of the evidence. It has long been a serious problem to determine in just what form a negative issue should be presented to a jury for answer. In many instances, when answered by either yes or no, such answer could be construed differently from what was intended by the jury; the Supreme Court, in Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956, has indicated as an approved way the method adopted by the trial court in this case. The rule announced by that court has been since followed by the Court of Civil Appeals in Traders & General Ins. Co. v. Snow, 114 S.W. 2d 682, and we feel impelled to do the same; the assignments are therefore overruled.

■ The seventeenth and eighteenth assignments complain of Issue No. 25, which submitted the average weekly wage rate of plaintiff under subsection 3 of section one, Article 8309, R.S. It is contended that because the evidence shows plaintiff could only work part time for his employer on account of the nature of the employment, and having worked only 174 days during the preceding year, his weekly wage rate should be ascertained by dividing his total earnings during that time by 52. We cannot agree with defendant's theory in this respect. The Amarillo Court disapproved the contention in the case of Traders & General Ins. Co. v. Milliken, Tex.Civ.App., 87 S.W.2d 503. It was shown by the evidence and found by the jury that plaintiff's average weekly wage rate could not be determined either under subsections one or two of Article 8309, and it was in just such cases as this that the Legislature provided subsection three under which the rate was determined in this case. We think there is little room to complain at the rate found by the jury, since it appears to be precisely the amount plaintiff would receive if he had worked during the preceding year at the rate received when he did actually work. It is also the amount upon which defendant had paid compensation to plaintiff for several weeks. The assignments must be overruled.

■ By three assignments, Nos. 20, 21 and 22, complaint is made because the court submitted to the jury in separate issues the question of whether or not plaintiff sustained injuries to each his head, his chest and his shoulders. It is claimed such submission unduly emphasized plaintiff's contentions. Plaintiff alleged injuries to these parts of his body named in the issues and there is substantial testimony to support each. We think if the inquiries as to all these parts of the anatomy had been embraced in a single question it would have been open to a valid objection; an answer to such a combination of inquiries would give rise to uncertain speculation as to just what was found to be the facts. Our conclusions in this respect are supported by the case of Texas Indemnity Ins. Co. v. Pemberton, Tex.Civ.App., 9 S.W.2d 65.

By assignments 23 and 24, complaint is made that issues Nos. 13 and 14 were improper, because they were too general in character to confine the jury in its deliberations to a consideration of such disabilities as plaintiff suffered arising from the injuries alleged to have been sustained by him. We think the objections are not well taken, and are overruled.

■ The twenty-fifth assignment complains that special issue No. 15 was so framed as to erroneously place the burden of proof upon defendant, when it properly rested with plaintiff. The issue reads: "Do you find from a preponderance of the evidence that plaintiff, A. V. Burns, has suffered any partial incapacity for work as a result of any injury or injuries received on June 23rd, 1936, if any you have found he has sustained?" There are forty-five pages of the transcript before us, devoted to defendant's objections to the charge; we have carefully read practically all of them and find that, insofar as the transcript discloses, no such objection as now urged was made to the submission of Issue No. 15. We are referred in the brief to page 37 of the transcript for the objection, and there we find an objection in form as presented to practically all other issues, but the objection is there levelled at issues 13 and 14. If we assume as we must that the transcript is correct, then no such objection was urged, and it must be considered as waived. However, as stated in the early part of this opinion, the plaintiff plead in the alternative that if he be mistaken in his claim that he was totally incapacitated by the injury sustained, then and in that event

he alleged he was partially incapacitated, and thereby raised what has sometimes been referred to as an "offensive" issue and he was entitled to have it so submitted. Texas Ind. Ins. Co. v. Thibodeaux, Tex. Com.App., 106 S.W.2d 268. The submission of the issue in the form presented being correct as applied to plaintiff's case, if defendant desired it presented in such way as to present its defense, it should have prepared and presented one for that purpose. Gulf, C. & S. F. Ry. Co. v. Conley, supra. We see no error presented by the assignment.

If there are any propositions or assignments presented in defendant's brief which we have not mentioned and discussed, it is not because they have not been considered; we spent much time and study on each and do not consider that any error is presented calling for a reversal of the case, and they are all overruled.

Finding no reversible error in the record, the judgment of the trial court is affirmed.