## UNITED EMPLOYERS CASUALTY CO. v. BEZDEK.

### No. 11173.

Court of Civil Appeals of Texas. Galveston.

Dec. 19, 1940.

Rehearing Denied Jan. 16, 1941.

E. A. Simpson, of Amarillo, and Will R. Saunders, of Dallas (W. E. Johnson, of Dallas, of counsel), for appellant.

Fitzpatrick & Wells, of Houston, for appellee.

GRAVES, Justice.

This appeal—in a compensation case—is from a $6,118.05 judgment against the appellant and in favor of the appellee, entered by the 10th District Court of Galveston County, both in response to a jury's verdict on special issues, submitted and upon independent ·findings of the court itself from the evidence, as for total, permanent disability resulting to the appellee from an injury received by him on May 24, 1939, in Galveston County, Texas, while in the course of his employment as an oil well worker for Glenn H. McCarthy, Inc., for which the appellant was the compensation insurer.

The special issues, together with the jury's answers thereto, were as follows:

"Special Issue No. 1. Do you find from a preponderance of the evidence that cross-plaintiff, Joe Bezdek, on or about the 24th day of May, 1939, was employed by Glenn H. McCarthy, Inc., in drilling an oil well in Galveston County, Texas?

"Answer 'Yes' or 'No', as you find the facts to be.

"Special Issue No. 2. Do you find from a preponderance of the evidence that on the date in question the United Employers Casualty Company was carrying a valid policy of Workmen's Compensation Insurance for the benefit of Joe Bezdek as an employee, if he was such employee, of Glenn H. McCarthy, Inc., to compensate him in the event of personal injury, if any, which he might sustain while employed by Glenn H. McCarthy, Inc., in drilling an oil well in Galveston County, Texas, if he was so employed?

"Answer 'Yes' or 'No', as you find the facts to be.

"Special Issue No. 3. Do you find from a preponderance of the evidence that on the date in question Joe Bezdek in the course of his employment in drilling an oil well in Galveston County, Texas, if he was so employed, received personal injuries?

"In this connection you are instructed that the term 'Personal Injuries', as used above, means damage or harm to the physical structure of the body and such disease or infection as naturally result therefrom.

"Answer 'Yes' or 'No', as you find the facts to be.

"Special Issue No. 4. Do you find from a preponderance of the evidence that such injury, if any, totally incapacitated Joe Bezdek to labor?

"In this connection you are instructed that the term 'totally incapacitated', as used above, means that the injured man, if injured, is disqualified from performing the usual tasks of a workman in such way as to enable him to procure and retain employment at ordinary work. The term does not imply an absolute disability to perform any kind of labor, but means disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment.

"You will answer 'Yes' or 'No', as you find the facts to be.

"Special Issue No. 5. Do you find from a preponderance of the evidence that the result of his injuries, if any, is permanent?

"In this connection, you are instructed that the term 'permanent' means that such results, if any, will continue for the rest of his life.

"You will answer 'Yes' or 'No', as you find the facts to be.

"Special Issue No. 6. If you have answered Yes to Special Issue No. 4 do not answer this issue, but if you have answered No to No. 4, then answer this issue.

"Do you find from a preponderance of the evidence that such injury, if any, partially incapacitated Joe Bezdek from labor?

"In this connection you are instructed that the term 'partially incapacitated', as used above, means that the man is able to perform only a part of his regular labor and that his earning capacity has been reduced partially but substantially.

"Answer by giving the per cent of incapacity or by No, as you find the facts to be.

"Special Issue No. 7. If you have answered No to Special Issue No. 6, do not answer this issue, but if you have answered by giving per cent of disability, then answer this issue.

"How long will the partial disability, if any, continue?

"Answer by giving the number of weeks, if any.

"Special Issue No. 8. If you have answered Yes to Special Issue No. 3, then answer this issue, otherwise do not answer.

"From a preponderance of the evidence what do you find to be the average weekly wage of Joe Bezdek at the time of his injury, if any? You multiply the average daily wage as found by a preponderance of the evidence by 300 and divide by 52.

"You will answer by stating the amount in dollars and cents.

"Special Issue No. 9. If you have answered Yes to Special Issues 4 and 5, answer this issue, but if you have answered No to either No. 4 or 5, do not answer this issue.

"Do you find from a preponderance of the evidence that manifest hardship and injustice would result if a lump sum settlement of existing liability, if any, be not made?

"Answer 'Yes' or 'No', as you find the facts to be.

"Special Issue No. 10. If you have answered 'Yes' to Special Issue No. 9, answer this issue, but if you have answered No to Special Issue No. 9, do not answer this issue.

"What do you find from a preponderance of the evidence is the present value of the sum of money due to Joe Bezdek, if any, if paid at this time instead of in weekly payments?

"Answer by stating the amount in dollars and cents.

"Special Issue No. 11. From a preponderance of the evidence, how many weekly payments, if any, are now past due to Joe Bezdek, the cross-plaintiff?

"You will answer by giving the number of weekly payments, if any, as you find the facts to be.

"Answers.

"To each of the first five special issues the jury answered 'Yes'.

"No answer was made to issues Six and Seven.

"To Special Issue No. Eight the answer was $34.61.

"To Special Issue No. 9 the jury answered 'Yes'.

"To Special Issue No. 10, the jury answered, $7,280.00.

"The jury did not answer Special Issue No. 11.

"Whereupon in open court the cross-plaintiff filed a remittitur to reduce the amount of recovery by a lawful discount."

The decree recited that the total so awarded was for $20 per week for 401 weeks of compensation for total permanent disability, reduced to a lump sum; that the appellant had theretofore paid 37 weekly installments of compensation, totalling $740; that under the verdict there was then due appellee $343 of weekly payments, which, discounted at 6%, amounted to the sum of $5,692.32, which, plus the sum of $425.73, made up the final total of $6,118.05, it being apportioned two-thirds to the appellee, and one-third to his attorneys.

Inveighing here against the decree so adverse to it, the appellant makes, in substance, these four contentions:

(1) The trial court reversibly erred in admitting the testimony of Dr. L. B. Corbett, which was wholly by deposition, in these three particulars: (a) "That based on his interpretation of purported X-ray pictures he had taken of appellee, which were not attached to his deposition"; (b) "That permitting him to express an opinion concerning the physical condition of appellee, when it appeared that he examined him merely to ascertain his physical condition and not for treatment, and did not treat him"; (c) "that giving his version

with reference to what the X-ray pictures of appellee showed."

(2) The trial court erred in submitting the issue of partial incapacity of the appellee conditionally, the appellant having been entitled to an unconditional submission of that issue, irrespective of how any other issue had been answered.

(3) The court further erred in submitting such partial incapacity "in that Special Issue, No. 6, relating thereto, inquired therein as to whether or not any partial incapacity existed, and also the further inquiry as to what the percentage thereof was,, if any".

(4) The burden of proof having been upon appellee to establish the affirmative of the issues submitted, the court erred in preceding the special issues with the general declaration that the jury should answer them "from a preponderance of the evidence, as you find the facts to be", then defining "preponderance of the evidence" to mean "the greater weight and degree of credible testimony", and concluding with the direction that, "each of said issues should be answered yes or no, as you find the facts to be"; because said instructions "had the effect of misleading the jury on the burden of proof, on each of the issues submitted, and left the impression with the jury that in order for them to answer any of the issues submitted from a defensive standpoint, such answers would have to be supported by a preponderance of the evidence."

Disposing of these presentments seriatim, it is concluded:

(1) The several objections to these three specified portions of Dr. Corbett's testimony were, in substance, (a) "it did not appear that by education, training, or otherwise, said Doctor was qualified to take, read, and interpret X-ray pictures correctly"; (b) "no predicate had been laid for the expression of his opinion, hence an opinion based in part upon the subjective symptoms of appellee should not have been permitted"; (c) "it was not shown that an X-ray picture of the appellee in the medical and legal sense of that term was actually ever made."

■ It may be that technical error inhered in some of these challenged rulings, but if so, it is concluded that the record otherwise shows no prejudice to have resulted therefrom, especially in that the same evidence was elicited from other witnesses who were, without a doubt, shown to be qualified to give it, hence any professional opinions upon the same thing from Dr. Corbett that may have been admitted were merely cumulative anyway, so were harmless. 19 Tex.Jur. par. 46, bottom page 71, footnote ,17, and cited authorities.

■ Moreover, appellant clearly errs in these attacks in so far as they question the qualifications of Dr. Corbett to give his opinion as an expert, either in answer to hypothetical questions or upon his own examinations of the appellee, upon his purely objective symptoms; this for the reason that, under the testimony, the doctor was clearly qualified as such an expert, wherefore such of his testimony as was based upon his general examination as a trained physician and surgeon was clearly admissible, and there is nothing in this record to show just what part of the criticised testimony was so based—that is, on purely objective symptoms—and what may have been based upon what the appellee and others told him, or purely subjective symptoms. This situation would, therefore, apparently bring this cause under the principle applied in Wininger v. Security Mutual Cas. Co., Tex.Civ.App., 120 S.W.2d 614, which holding, in turn, was bottomed upon Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170.

■ It was shown that Dr. Corbett took the full prescribed college course in medicine, was a member of the Texas State Medical Society, had served as interne in the Memorial Hospital in Houston for one year, and had practiced his profession of a physician and surgeon in the City of Houston for 15 years; these facts plainly qualified him for the role of an expert medical witness, whose opinions were receivable as such, especially since appellant offered nothing whatever to the contrary; indeed, presumably at least, the learned trial court, under the testimony referred to, took judicial cognizance of the Medical Practice Acts, both civil and criminal, of Texas, under which Dr. Corbett could not have so practiced his profession without the qualifications therein prescribed; see Vernon's Texas Annotated Civil Statutes, Arts. 4495 to 4512, inclusive, and Vernon's Annotated Penal Code of Texas, Chapter 6, Medicine, Arts. 739 to 745, inclusive.

■ In these circumstances, added to the undisputed fact that Dr. Corbett never undertook to take any X-ray pictures himself of the appellee, nor were any X-ray pictures or plates offered in evidence in con-

nection with any of his testimony, such authorities (cited by appellants) as Smith v. State, Tex.Cr.App., 99 S.W. 100; Republic Underwriters v. Lewis, Tex.Civ.App., 106 S.W.2d 1113; Texas Employers' Ins. Ass'n v. Wallace, Tex.Civ.App., 70 S.W.2d 832; and Kansas City, M. & O. R. Co. v. Swift, Tex.Civ.App., 204 S.W. 135, were not based upon analogous facts to those here; that is, no X-ray photographs were offered in this instance, Dr. Corbett was so shown to be a thoroughly qualified medical witness, and this testimony was not, like that in many of appellant's cited cases, limited to that of medical experts, but was far from it. Indeed, entirely independently of any testimony of Dr. Corbett upon either the extent of the appellee's injuries, or the probable duration thereof, or of the resulting incapacity therefrom, there was ample admissible testimony undisputedly presented from several lay-witnesses, who sustained such intimate relations with appellee as to make it clearly receivable, to fully sustain if not require the verdict the jury rendered on all those features; wherefore, in any event, Dr. Corbett's opinion testimony—whether violative of the strict rule some of appellant's invoked authorities pronounce against receipt of a medical expert's opinion, based partly upon the subjective symptoms of an allegedly injured person— was only cumulative anyway, hence does not call for a reversal.

The appellee's own testimony, together with that of a number of other lay witnesses, all of which was undisputed in any respect, was, standing alone, amply sufficient to support the jury's findings, both upon the nature and extent of his injuries, his condition at the time of the trial, and that he was at that time totally and permanently incapacitated, within the meaning of the definitions of those terms, as given in the court's charge; it is unnecessary to re-iterate, or even to make a résumé of that testimony, since the quoted findings of the jury fully reflect the issues it was material upon; in the given circumstances its admissibility is supported by these authorities: Texas Employers' Ins. Ass'n v. Scott, Tex. Civ.App., 46 S.W.2d 348; Texas Employers' Ins. Ass'n v. Burnett, Tex.Civ. App., 52 S.W.2d 771; Petroleum Casualty Co. v. Bristow, Tex.Civ.App., 35 S.W.2d 246; Standard Accident Ins. Co. v. Williams, Tex.Civ.App., 4 S.W.2d 1023, 1026; Oilmen's Recip. Ass'n v. Hayes, Tex.Civ. App., 295 S.W. 675.

No. (2). This proposition, based for authority upon Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, alone, is considered inept here, for these among other reasons: The holding in the Wright case upon which it was so rested, as correctly reflected in the cited report thereof in syllabi 1 to 5, inclusive, at page 314 of 123 S.W.2d, was specifically applied only to a case wherein the pleadings and evidence raised ultimate issues of fact over both total and partial disability; whereas, no such situation exists here, in that there was no issue of partial disability properly raised upon this trial by either party; the appellee sued for total incapacity alone and tendered proof upon that only, declaring in effect that it existed at the time of this trial to the exclusion of any other compensatory right in himself, except the monthly payments therefor that had accrued up to that date; the appellant, in turn, did not plead any partial incapacity as affecting the appellee, nor did it offer any proof nor request any submission, upon such a point, merely contenting itself with an objection to the court's special issue No. 6, directing the jury not to answer as to whether there had been partial incapacity if they had already found under issue No. 4 that total incapacity existed, on the mere assertion that it—whether or no—was entitled to a positive and unconditional submission of whether or not there had been partial incapacity.

In these circumstances, under the latest holdings of our Supreme Court, if appellant desired tried out an issue as to whether or not the appellee at the time of this trial was only suffering from partial incapacity, if any, it could and should have properly raised such an issue by pleading, proof, and request for submission of an inquiry upon it, and not having done so in any respect, the principle applied in its cited Wright case is inapplicable, and it waived that matter. Traders & General Ins. Co. v. Garry, Tex.Sup., 143 S.W.2d 370; Wichita Falls & O. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; Traders & General Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391; Georgia Casualty Co. v. Ginn, Tex.Civ.App., 272 S.W. 601; Federal Surety Co. v. Scott, Tex.Civ.App., 22 S.W.2d 157.

Furthermore, the mere fact that Dr. Corbett answered a cross-interrogatory of appellant to the effect that the appellee

could then "do some form of work, but not hard physical labor", did not, standing alone, raise any material and ultimate issue of fact in appellant's favor over whether or not the appellee was then suffering from partial incapacity, in the circumstances otherwise existing; indeed, even if such an issue had been otherwise properly raised by pleading, sufficient proof, and request for its submission, that statement would not have supported partial incapacity anyway, under the court's quoted definition of "totally incapacitated" in special issue No. 4, which was a correct one. Georgia Casualty Co. v. Ginn, Tex.Civ. App., 272 S.W. 601; Federal Surety Co. v. Scott, Tex.Civ.App., 22 S.W.2d 157.

Obviously, appellant's subsidiary claim under No. (3), supra, that it had been also entitled to a further inquiry as to what percentage of partial incapacity existed, if any, falls with its principal one upon this feature, under the holding that no real issue of partial incapacity existed.

The (4th) and major onslaught upon the form of the issues submitted by the trial court, as quoted supra, is likewise thought not to square with the latest holding of the Supreme Court upon this identical situation; while appellant relies upon such cases as Federal Surety Co. v. Smith, Tex.Com.App., 41 S.W.2d 210; Gulf States Utilities Co. v. Moore, 129 Tex. 604, 106 S.W.2d 256; Federal Underwriters Exchange v. Rigsby, Tex.Civ.App., 114 S.W. 2d 354, our Supreme Court in the later one of Traders & General Ins. Co. v. Jenkins, Tex.Com.App., 141 S.W.2d 312, distinguishes them all on the facts from this cause, and, in applicable effect holds that the trial court's framing of the special issues here was correct, did properly place the burden of proof upon this appellee to establish the affirmative of the issues submitted, and did not tend to confuse the jury in understanding where that burden lay.

No extended discussion of the differentiation made by the Supreme Court of the Jenkins case from those upon which appellant relies is called for, since those two lines of holdings are specifically and definitely declared and speak for themselves; suffice it to say, however, that the plain distinction between the form in which the issues in the Jenkins case (as well as here) were submitted—that is, in effect, in the language of this special issue No. 4: "Do you find from a preponderance of the evidence that such injury, if any, totally incapacitated Joe Bezdek to labor", and that condemned in those prior holdings, to wit, "Was or was not the plaintiff totally disabled"—lies in the facts that the former cases, using both the positive and negative forms of inquiry, left their meaning in doubt, thereby confusing the jury over where the burden of proof lay on the inquiries; whereas, that disjunctive form of combining both the positive and negative on the inquiry was discarded in the Jenkins case, as it also was in this case, and the positive form only of inquiry was substituted, which the Supreme Court held completely cured the objections the appellant here appeals to.

In other words, it is clear that the learned trial court in submitting this cause to the jury on July 5, 1940, appears to have correctly applied the Supreme Court's ruling, then just made, on June 19, 1940, in the Jenkins case, and to have submitted these issues in conformity thereto.

These conclusions require an affirmance of the challenged judgment; it will be so ordered.

Affirmed.