**SPARROW et al. v. SAFETY CASUALTY CO.**

No. 3232.

Court of Civil Appeals of Texas. Beaumont.

Jan. 14, 1938.

Rehearing Denied March 16, 1938.

Elton Cruse, of Beaumont, for appellants.

Lipscomb & Lipscomb, of Beaumont, for appellee.

WALKER, Chief Justice.

This is a compensation case with Magnolia Petroleum Company, the employer; appellee, Safety Casualty Company, the compensation insurance carrier; Carlton Sparrow, deceased, the employee; and appellants, Esther Sparrow, surviving widow of the deceased, and Steve Sparrow, surviving father of the deceased, the compensation claimants. The appeal is from a judgment entered on a verdict instructed by the lower court in favor of appellee.

The facts are as follows: On the 27th day of November, 1931, when he was about 21 years of age and while in the course of his employment, the deceased was injured in the following manner, as testified to by B. Turner, a fellow employee:

"Yes, sir, I know the last time he worked with me, we were breaking coke together and the coke was about five feet thick and he was breaking a piece and he got to the pipe and broke it and it split open and his hold of the spuds slipped off and he fell off his back on the spuds and he replied to me he hurt hisself, and I taken him out the first door. ·

"Q. Now this spud bar, you say you were breaking the coke with, about how long was that? A. They are six feet long.

"Q. What was it made out of, Turner? A. Well, made out of steel, call it steel bars.

"Q. About how much would you imagine it weighed? A. Weighed between twenty-five pounds and thirty, thirty five. .

"Q. Now, at the time this happened, did Carlton Sparrow give any evidence of pain or anything like that, when he fell? A. Yes, sir, he did.

"Q. What evidence did he give? A. He said he hurt his side and he went on to the door, went on and taken his bath. * * *

"Q. Prior to that time, about what size man was Carlton Sparrow? A. As near as I could get at him, he was a man weighed about 185 pounds, you know, just rough, looking at him. I couldn't just say right up to the minute what he did weigh, but he was weighing around 185 pounds.

"Q. Before this happened now, did he appear to be able-bodied and strong? A. Yes, sir, he did.

"Q. About how long had you all been working together out there at the Magnolia? A. We had been working together around three years, off and on.

"Q. Now, did Sparrow ever work out there at the Magnolia any more after that with you? A. No, sir, not with me.

"Q. Turner, I will ask you if after that Carlton Sparrow ever worked with you anywhere? A. Yes, sir."

The testimony of the witness, B. Turner, was all the testimony on the nature of the injury received by the deceased. His immediate family with whom he lived gave

no testimony as to the effect of the injury on the health of the deceased; their testimony was to the effect that, following the operation for appendicitis, he was not able to work, was in bad health, developed tuberculosis in 1932, etc. Several members of his family died of tuberculosis.

Following his injury, Carlton Sparrow was operated on for appendicitis on the 2d day of December, 1931. From that date he was not able to do hard manual labor. He died on the 16th day of September, 1936, as the result of "Pulmonary tuberculosis. Date of onset January, 1932. Other contributing causes of importance, Lobar Pneumonia." This statement is taken from the death certificate of Carlton Sparrow.

Prior to his injury, the deceased was treated for syphilis. In 1933 he was examined by Dr. Barr, a witness for appellants, who made the following report of his findings, introduced by appellants: "After due consideration of every material phase of this case, including of course a careful study of our own findings and those of the rentgenologist and pathologist, it is our unqualified opinion that this man's life will terminate within a relatively short time as a result of the inroads and destructive processes of lues and tuberculosis." Introduced by appellee: "The X-ray and other examinations indicate positively that this man is now and has been for an indefinite period suffering from luetic infection and tuberculosis; which diseases are the cause of his loss of flesh and strength. There is no corroborative evidence whatever indicating that he suffered an injury to the right side of his chest, as he claims, on or about November 27, 1931."

Appellants propounded to their witness Dr. Ferguson an exhaustive hypothetical question, summarizing the life history of the deceased, which embraced the following question: "Now, Doctor, assuming all those facts which I stated in both of those questions, and excluding facts that are not stated in that question from your consideration, by such process of elimination would you or not say that it was probable that that fall was the inciting cause of the aggravation or development of that tuberculosis and syphilis and of the subsequent death of Carlton Sparrow?" To this question the witness answered, "It could be possible." This witness gave the following additional testimony:

"Doctor, here is a diagnosis showing that a man had an active case of tuberculosis and an active case of syphilitic infection. From the statement based in part upon the X-ray report, would you say that the syphilis and tuberculosis was the producing cause of this man's death? A. Yes, I think so. * * *

"Q. Doctor, in saying that the syphilis and tuberculosis were the producing cause of the death of Carlton Sparrow, from that do you mean to say that there were no other contributing causes? A. No, I did not say that."

## Opinion.

Appellants rested under the burden of raising the issue that the injury received by the deceased in 1931 was the producing cause of his death. On this issue, in Texas Employers' Ins. Ass'n v. Burnett, 105 S.W.2d 200, 202, Judge German, speaking for the Commission of Appeals, said: "By whatever term we may attempt to define the causal connection between the injury and the death, in the absence of a disease or infection which is the natural result of the injury, there must be shown a direct causal connection between the injury and the death, with no efficient intervening agency, with sufficient certainty that it may be reasonably concluded that death would have resulted from the injury, notwithstanding the subsequently intervening disease. If but for the intervening independent disease the employee would not have died, then it is obvious that the adequate and just compensation contemplated by the law could have been allowed under the disability provisions of the statute." The tuberculosis was not the natural result of the injury received by the deceased, and there was no testimony connecting that disease with his injury. On the facts of this record it conclusively appears that Carlton Sparrow's death was the direct and proximate result of syphilis and tuberculosis, and that the injury received by him was in no sense a "contributing" or "proximate" cause, as these terms were construed by the Supreme Court in the Burnett Case.

The judgment of the lower court is in all things affirmed.