**SOUTHERN UNDERWRITERS v.
JONES et al.**

No. 13940.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 22, 1939.

Rehearing Denied March 1, 1940.

**54**

Bullington, Humphrey & King, of Wichita Falls, and Will R. Saunders, Claude Williams, and Henry D. Akin, all of Dallas, for appellant.

Bonner, King, Dawson & Jones, of Wichita Falls, for appellees.

DUNKLIN, Chief Justice.

While Roy Earl Jones was working as an employee for the Brashear Drilling Company, a co-partnership, in Clay County, he contracted pneumonia, from which he died. His employer carried insurance with the Southern Underwriters, under the provisions of the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq.

After his death, Pauline Jones, his widow, in behalf of herself and as next friend for her minor son, Gary Jones, filed with the Industrial Accident Board a claim for compensation under the Workmen's Compensation Act. The Industrial Accident Board awarded to the widow and minor child each $10 per week for a period of 360 consecutive weeks, together with a fixed sum as attorney's fees.

The insurer, being dissatisfied with that award, brought suit in the District Court of Clay County, to annul it.

To that petition the widow, for herself and as next friend for her minor son, Gary Jones, filed an answer, together with a cross action, to recover compensation on the policy of insurance which the Southern Underwriters had issued to Brashear Drilling Company. The cross action embodied allegations of the death of Roy Earl Jones, while engaged as an employee of the Brashear Drilling Company, who was a subscriber and carried a policy of insurance with the Southern Underwriters. According to further allegations in that cross action, while so employed, Roy Earl Jones sustained personal injuries in the course of his employment as a tool dresser, as follows: He and his co-worker, Ray Mason, were at work on an oil well being drilled by his employer, and in the performance of the duties of that work they used a long handled, half moon jack, and while the deceased was pulling upon the handle with all his might, with Ray Mason pushing, the handle slipped out of the jack, causing the deceased to fall with his back against the derrick floor and Ray Mason fell on top of him, with his knee striking the deceased a heavy blow on his chest, and from that accidental injury pneumonia set up, which resulted in the death of the deceased.

The cross action embodied another count, in which it was alleged that just before and after the deceased sustained the injury above alleged, the bailer used in the well being drilled, and with which the deceased was working, sprang a leak near the bottom and the pressure from the water in the bailer above the leak caused it to flow out in quite a large quantity, while the bailer would come up out of the well with a whirling motion, and two or three times the deceased was strangled with water thrown in his face as the bailer came out of the well, which water was breathed into his lungs and caused him to become strangled, as the result of which his lungs became inflamed, and that the breathing of said water into his lungs caused or contributed to cause pneumonia, from which Roy Earl Jones died.

It was alleged that both of the injuries above noted were accidental, personal injuries sustained by Roy Earl Jones in the course of his employment, and were compensable under the Workmen's Compensation Act. In that connection, it was alleged that said Jones had been employed by the Brashear Drilling Company to do the same character of work for the period of two months prior to the date of his death and prior to that employment he worked for others in the same capacity and in the same general territory, for approximately the same wages, for more than a year prior to his death. That his average daily wages, as defined by said Act, which were received by him at the time of his death and for more than a year prior thereto, were $7 per day, for seven days a week, aggregating $49 per week, and that his average annual wage, as defined in the Workmen's Compensation Act, was $2,100, and his average weekly wage was $40, all of which was the same wage earned by others engaged in the same employment, near the same place.

It was further alleged that if for any reason the manner of computing the compensation claimed, as above alleged, appears to the court to be unfair and impractical for compensation, then the defendant prayed the court to compute said wages in any manner that might seem just and fair to all parties. There were further allegations of notice of the accident and injury given to the Brashear Drilling Company and to Southern Underwriters and the Industrial

Accident Board, within the. manner and time prescribed by the Statute, with further allegations of the action of the Board on the claims filed with it by the defendants.

The insurer filed an answer to that cross action, consisting of a general demurrer, special exceptions, a general denial and a special answer, in which it was alleged that the deceased contracted what is commonly known as streptococcic sore throat, which is a germ infection, and that said infection, by direct extension, spread to the bronchi and lungs, and was the direct and producing cause of his death, and that the deceased did not die by reason of any accidental injury in the course of his employment.

On the following day after that answer was filed, the plaintiff took a non-suit of the cause of action theretofore asserted in the District Court, which was permitted by .order of the court, without prejudice to the defendant's cross action.

By trial amendment, the defendants also sought an allowance for attorney's fees to Mr. Bert King, who was employed by them to represent their interests.

The case was tried before a jury upon special issues, and their findings appear in the record.

The issues and findings thereon were as follows, eliminating therefrom instructions to the effect that the submission of some of the issues was conditioned upon certain answers to preceding issues:

"Special Issue No. 1. Do you find from a preponderance of the evidence that Roy Earl Jones was struck in the chest or stomach by the knee of Ray Mason on or about October 25th, 1937, in the course of his employment with the Brashear Drilling Company? Answer: Yes.

"Special Issue No. 2. Do you find from a preponderance of the evidence that Roy Earl Jones received an injury to his lungs as a result of being struck by the knee of Ray Mason on or about October 25th, 1937, if he was so struck? Answer: Yes.

"Special Issue No. 3. Do you find from a preponderance of the evidence that such injury, if any, you have found in answer to Special Issue No. 2, to the lungs of Roy Earl Jones was an accidental injury? Answer: Yes.

"Special Issue No. 4. Do you find from a preponderance of the evidence that the injury to his lungs, if any, that Roy Earl Jones received on or about October 25th, 1937, as the result of being struck by the knee of Ray Mason, if he was so struck, resulted in the pneumonia from which he. died? Answer: Yes.

"Special Issue No. 5. Do you find from a preponderance of the evidence that Roy Earl Jones inhaled water into his lungs on or about October 25th, 1937, in the course of his employment for Brashear Drilling Company? Answer: Yes.

"Special Issue No. 6. Do you find from a preponderance of the evidence that Roy Earl Jones suffered an injury to his lungs by the inhalation of water on or about October 25th, 1937, if he did inhale water? Answer: Yes.

"Special Issue No. 7. Do you find from a preponderance of the evidence that said injury, if any, to the lungs of Roy Earl Jones, suffered as a result of the inhalation of water, if he did so inhale water, was an accidental injury? Answer: Yes.

"Special Issue No. 8. Do you find from a preponderance of the evidence that the injury to his lungs, if any, that Roy Earl Jones received as a result of inhaling water into his lungs on or about October 25th, 1937, if he did so inhale water, resulted in the pneumonia from which he died? Answer: Yes.

"Special Issue No. 9. Do you find from a preponderance of the evidence that Roy Earl Jones worked in the employment in which he was working for Brashear Drilling Company, whether for the same employer or not, substantially the whole of a year immediately preceding his injury, if any? Answer: Yes.

"Special Issue No. 9-A. Do you find from a preponderance of the evidence that such work, if any, was performed, if it was, in the same general vicinity? Answer: Yes.

"Special Issue No. 10. From a preponderance of the evidence, what was the average daily wage of Roy Earl Jones, if any, during the year immediately preceding the time he ceased work for the Brashear Drilling Company? Answer: $6.15.

"Special Issue No. 11. From a preponderance of the evidence, find how many days Roy Earl Jones worked, if any, in the same vicinity, as a tool-dresser, during the year immediately preceding the time he ceased work for the Brashear Drilling Company. Answer: 362 days.

"Special Issue No. 12. Do you find, from a preponderance of the evidence, that

manifest hardship and injustice will result to the defendant, Pauline Jones, unless the plaintiff company is required to redeem its liability, if any, herein, by the payment of a lump sum? Answer: Yes.

"Special Issue No. 13. Do you find, from a preponderance of the evidence, that Roy Earl Jones did not die solely as a result of natural causes, unaided by injuries, if any, as inquired about in Special Issues Nos. 2 and 6 herein, or disease and infection, if any, naturally resulting from such injuries, if any? Answer, 'He died solely from such natural causes', or 'He did not die solely from such natural causes'. Answer of the jury: 'He did not die solely from such natural causes.' "

Upon that verdict judgment was rendered, reciting that Mrs. Pauline Jones and Gary Jones were entitled to compensation at the rate of $20 per week for 360 weeks, but judgment was rendered in favor of each of them for the sum of $6.66⅔ per week for 360 weeks, and in favor of Bert King, their attorney, for $3.33½ per week for 360 weeks. The amount allowed Pauline Jones included 31 weekly instalments already accrued at the time of trial, with six per cent interest thereon, and 329 weekly instalments not then accrued, to be redeemed by the insurer in a lump sum payment, with six per cent discount allowed by Article 8306a of the Statutes, all aggregating $2,043.86, with interest from date of judgment at six per cent per annum. And on the same basis, Bert King was awarded $1,021.93 as attorney's fees.

The Southern Underwriters has appealed.

Appellant has presented 26 propositions, on which it seeks a reversal of the judgment rendered.

By the first proposition complaint is made of the refusal of the court to grant appellant's request for an instructed verdict in its favor on the whole case, for lack of sufficient evidence to prove that Roy Earl Jones received an accidental injury to his lungs in the course of his employment, which caused him to develop the pneumonia from which he died.

By the second proposition, it is contended that the plaintiffs wholly failed to discharge the burden to show by a preponderance of the evidence that the deceased would not have developed and died from streptococci bilateral pneumonia, from his streptococci sore throat, even if he had not been struck in the chest or stomach by Ray Mason's knee some three days before he died, and even if he had not been strangled by water from the bailer some fifteen days before he died.

And further, that the court erred in refusing to set aside a contrary finding of the jury in answer to Issue No. 13, because unsupported by the testimony and against the overwhelming weight of the testimony.

By the third, fourth, fifth and sixth propositions, complaint is made of the refusal of the trial court to set aside the findings of the jury in answer to special issues 2 and 4, that Roy Earl Jones received an injury to his lungs by being struck by the knee of Ray Mason, which resulted in pneumonia, from which he died, and the findings in answer to special issues 6 and 8, that he suffered an injury to his lungs by the inhalation of water, which caused an injury to his lungs and resulted in pneumonia, from which he died, because unsupported by the testimony and against the great weight of the testimony.

Under the eighth proposition, it is insisted that for lack of such proof, the court erred in admitting the testimony of medical experts to the effect that the death of Roy Earl Jones might reasonably be traceable to those alleged causes, if in fact they occurred.

The controlling test as to whether or not there is sufficient evidence to support a verdict in favor of plaintiffs is stated in 17 Tex.Jur., 910, in accordance with numerous decisions there cited, as follows: "While the law does not attempt to tell a juror the amount or kind of evidence that ought to produce belief in his mind, it is essential to a sustainable conclusion that there be more than a mere scintilla of evidence; the matters that are relied upon must be of some probative force or do more than raise a mere suspicion or surmise of the existence of the fact which is sought to be proved. If, discarding all adverse evidence, and giving credit to all evidence that is favorable to the successful party and indulging every legitimate conclusion that is favorable to him, a jury might have found in his favor, then it is to be concluded that there is evidence to support the verdict."

Ray Mason, who worked with Roy Earl Jones, testified that while they were working with a half moon jack, equipped with a long handle, and while both were pulling on the handle, it slipped and both

fell, deceased striking the hard floor on his back and witness falling on him. Witness further testified that in falling his knee struck Jones right in his chest; that witness weighed 180 pounds; Jones had a hard fall and after the fall witness helped him up and he complained that witness's knee had knocked the breath out of him; Jones rest-ed a few minutes and then resumed his work, and thereafter worked one day and a part of another; that the place where witness's knee struck Jones was part of the chest and part of the stomach; prior to his fall Jones complained of throat troubles and after his fall he complained that his throat and chest were hurting him.

Ray Mason testified further that a bailer used by him and Jones for bailing water from a well being drilled by their employer, the Brashear Drilling Company, had a leak near the bottom through which water was thrown as the bailer was being drawn out, with a whirling motion, and Jones was strangled twice with water thrown in his face, from that leak in the bailer.

"Q. What tower did you work? A. I worked from four in the afternoon until twelve midnight.

"Q. On the occasion when Roy became strangled, I will ask you to tell the jury whether it was considerable strangle and choking, or not much. A. Not so much, no; he was over it in a few minutes and ahead with his work, however, I didn't do any more bailing out there that night, be-cause both of us were wet and we didn't have any fire out there and no more clothes.

"Q. Did it or not strangle him? A. Yes.

"Q. Did he cough after it? A. Some, yes.

"Q. Do you know whether that was be-fore or after? A. I fell on him?

"Q. Yes. A. That was before I fell on him, I believe. I aint sure about that.

"Q. What time of the day, as near as you can remember, was it you fell on him? A. Well, we didn't have no watch out there, and I couldn't tell exactly what time it was, but it was after dark; I would say somewhere around seven-thirty or eight o'clock, maybe nine.

"Q. Did Roy go on and complete that tower until midnight? A. Yes.

"Q. Did he come back the next day? A. Yes, he came back and worked the next day.

"Q. The next afternoon at four o'clock you were both out there on the job? A. Yes, sir.

"Q. Did you go out together? A. Yes, sir.

"Q. Did he say anything about having any pains the next afternoon? A. He said his throat hurt him some and I think he said he was sore in his chest.

"Q. If it was on Tuesday you fell on him was it or not the next night before mid-night that you got some body to take his place? On Thursday? A. Yes, about nine o'clock.

"Q. Was he sick? A. He was awfully sick, yes, sir.

"Q. Did he or not have a chill? A. He had a chill that night, yes.

"Q. I will ask you whether or not he left the rig and lay down. A. Yes, went to his car and stayed there until midnight. He didn't have any other way to town ex-cept with me and he lay down in the car and stayed there until midnight.

"Q. Who did you get to take his place? A. It was the night watchman, Dan Pierce. Roy said he thought he could stay out there and he stayed until midnight and we went to town.

"Q. Are you certain that was Thursday night? A. I think it was, yes sir.

"Q. Where did you go then? A. We went to the Wichita Falls Clinic Hospital and saw Dr. Kahler.

"Q. After you went to the hospital and Dr. Kahler saw him, where did you go then? A. Went home, about one-thirty and we went home and went to bed.

"Q. Do you know whether he was sick that night? A. He was sick, but he was sicker the next day."

Witness further testified that Roy Jones went to the hospital Friday afternoon, Oc-tober 29th, and died November 4th or 5th, 1937, and was 22 years of age.

According to testimony of Dr. Kahler, who was called to treat Jones after he fell with Ray Mason on him, and continued treatment until Jones died, the latter's throat was infected with streptococci germs, which spread to his lungs, where pneumonia developed and caused his death. He testified as follows:

"A. It was a very severe type of infec-tion, as shown by his low blood count and high temperature; streptococci pneumonia

is one of the most severe pneumonias we have, and it is a progressive thing, and at no time did he seem to gain any ground. He just kept on going down and getting worse, in spite of everything we could do.

"* * *

"Q. Now, if a patient has a streptococci throat and had the vitality of resistance against pneumonia, and the streptococci germ lowered by irritation of any kind to the lungs, is it not probable that he would likely have pneumonia? A. It depends again on the severity of the injury.

"Q. And the extent of the infection? A. Yes.

"Q. If the injury was small and the infection was strong, if his vitality was lowered, he would have a good chance to take pneumonia, wouldn't he? A. Yes.

"* * *

"Q. Taking it for granted he had a blow on the chest that even in a small way irritated the lining about his lungs, or if he had breathed water into his lungs or took water into his lungs, and died after either one of those premises, as a fact then, Doctor, as I understand you, you say you could not exclude that being a factor, or that it might be a factor in producing his death? A. That is right."

Dr. Smith testified as follows:

"Q. If you hit a man with a thing that is as soft and round, or as hard as a man's knee, a man weighing 180 pounds, and that with his weight against it, and if that caught his breast or rib or diaphragm, it would probably produce some sort of an injury, wouldn't it? A. If he got heavy enough lick, it would. It would depend on the severity of the lick.

"Q. Now, as to the strangulation, we ordinarily catch the water in the windpipe, but if the water had went in, and it was salty, and you really got it down into the lungs, there would be some injury to the lungs, wouldn't there? A. Yes.

"Q. If a physical injury was done to the lungs, of course, you are not saying that it was not possible, do you? A. No.

"Q. If a physical injury of the slightest degree was inflicted to this man in the lower part of his lungs, might not that make a fertile field for the streptococci germ to work in? A. That is possible, if you got in an area of lowered resistance.

"Q. You spoke a while ago of an injury not producing pneumonia; as a matter of fact, an injury merely prepares a place for the streptococci or pneumococci germs to go to work in, doesn't it? A. That is true.

"Q. If he had any injury to his lungs, then that prepared a place for the streptococci germs to go to work in, in this instance? A. That would be possible.

"Q. Doctor, if you give a man a very severe streptococci throat and that goes down from his throat, and we will assume at the base of his lungs he has a slight injury, he might survive the streptococci pneumonia but for the fact when it reaches the injured place it would more readily take hold and might be the determining factor of whether he lived or died? A. That is possible, if he had a severe chest injury.

"Q. You say it was going to take a considerable blow to get to the lungs. I am not asking you about that. I am asking you if that blow gets there so it will injure the lung, whether it is a light blow or a big blow, but if it gets there so it will injure the lung, the man is more likely to die with pneumonia, isn't he? A. That is right.

"* * *

"Q. Doctor, when you examined him you found consolidation in the bottom of the lungs, is that right? A. Yes.

"Q. Then it was you told the wife there was no hope? A. I am sure it was at that time."

Dr. Prichard testified as follows:

"Q. Doctor, if you assume that a man has a streptococci throat, with that assumption, will he take pneumonia from an injury or lowered vitality more readily than he would otherwise? A. He would.

"Q. If he had a short chain type (streptococci germ), would it likely give him pneumonia if he had an injury to his lungs? A. It would be more likely to than if he didn't have it, yes."

Following are hypothetical questions, based on testimony of Ray Mason as to the fall and actions and conditions of Jones thereafter:

"Q. Do you think that his lungs might or probably would have been injured in that fall? A. I think they would.

"Q. Can a man be thrown or fall against a derrick floor or any hard substance with sufficient force to injure his lungs when he strikes on his back? A. Yes, sir.

"Q. I will ask you if an injury like being struck with the knee on the breast bone, or near the breast bone, what sort or type of injury, with reference to being

local or wide injury, would that produce in the lungs, if any? A. That type of injury, I would think, would most likely injure a considerable area of the lungs.

"Q. If you had a considerable area of the lungs injured, what type of pneumonia would you have? A. Most likely bronchial pneumonia.

"Q. I want to ask you about breathing in some solid matter like water, if a man should breathe in enough muddy water from a bailer, enough to strangle him, would that injure his lungs? A. It most likely would.

"Q. My question was that if he had an injury to his lungs, either in the muddy water or by a trauma, the blow in the chest, granting that he had a very bad streptococci throat after that, in your opinion the injury to his lungs, would that be a direct operating cause to produce pneumonia? A. Yes.

"Q. Would the fact that he made progress from Friday, and died on Friday, the 5th, at 11:45 in the morning, with no rallying, and the further fact that he took it within two or three days after he received the blow, if he did receive it, would that, to the physician's mind, would that indicate that something outside of the streptococci throat contributed to it? A. You could have a case with a streptococci pneumonia that would run that course without an injury, but I would say with an injury—(interrupted)

"Q. Go ahead. A. With an injury to the lungs you would expect to have that type of determination. With that type of pneumonia, if he had an extensive injury to the lungs."

In view of that testimony, all assignments of error based on the contention that the findings of the jury, that in the course of his employment by the Brashear Drilling Company the deceased sustained the alleged personal injuries, which resulted in his death, were without sufficient support in the evidence, are overruled. Carter v. Travelers Ins. Co., 132 Tex. 288, 120 S.W. 2d 581; Maryland Casualty Co. v. Rogers, Tex.Civ.App., 86 S.W.2d 867 error refused; Texas Emp. Ins. Ass'n v. Parr, Tex.Com. App., 30 S.W.2d 305; Travelers' Ins. Co. v. Peters, Tex.Com.App., 14 S.W.2d 1007; Travelers' Ins. Co. v. Smith, Tex.Civ.App., 266 S.W. 574.

Many decisions are cited in appellant's brief, in which it was held that the evidence relied on to support claims for compensa-

tion under the Workmen's Compensation Act, was insufficient because it amounted to no more than a mere scintilla of proof, consisting solely of surmises and suspicions, which fell short of competent proof of alleged injuries sustained. It would unduly extend this opinion to discuss the facts involved in those cases, which we believe distinguish them from the instant case, and from the decisions cited above to support our conclusion upon the question now discussed.

Following are some of the cases relied on by appellant: Texas Employers Ins. Ass'n v. Jackson, Tex.Com.App., 265 S.W. 1027; Amann v. Republic Underwriters, Tex.Civ.App., 100 S.W.2d 778; Texas Employers' Ins. Ass'n v. Burnett, 129 Tex. 407, 105 S.W.2d 200; Traders & Gen. Ins. Co. v. Keahey, Tex.Civ.App., 119 S.W.2d 618; Safety Casualty Co. v. Walls, Tex. Civ.App., 117 S.W.2d 879; Sparrow v. Safety Casualty Co., Tex.Civ.App., 114 S. W.2d 615; Texas Emp. Ins. Ass'n v. Fitzgerald, Tex.Com.App., 296 S.W. 509; Tex. Emp. Ins. Ass'n v. Sloan, Tex.Civ.App., 36 S.W.2d 319; Tex. Emp. Ins. Ass'n v. Mints, Tex.Civ.App., 10 S.W.2d 220.

Appellant's ninth proposition reads: "The trial court erred in overruling plaintiff's objection and exception to and in submitting special issue No. 1 to the jury inquiring whether they found from a preponderance of the evidence that Roy Earl Jones was struck in the chest or stomach by the knee of Ray Mason on or about October 25th, 1937, in the course of his employment with the Brashear Drilling Company, because such issue is clearly subject to the objection and exception timely interposed thereto by the plaintiff that said issue is duplicitous, in that it calls upon the jury to answer two questions in one and it requires the jury to specifically answer said issue 'Yes' or 'No', whereas their answer to one of the matters inquired about might be 'Yes' and the answer to the other matter inquired about might be 'No'."

The objection to Issue No. 1, on account of duplicity reads: "Plaintiff further objects to said issue because it is duplicitous in that it calls upon the jury to answer two issues in one; first, at to whether Ray Mason struck Jones in the chest; and next, whether or not this was done in the course of his employment with the Brashear Drilling Company. Plaintiff further objects and excepts to this issue, because it requires the jury to specifically answer said issue

'Yes' or 'No', and in answering said issue, the jury is called upon to answer the issue in one way, whereby ·their answer to one issue might be 'Yes', and the answer to· the other issue might be 'No'."

Following that objection, this is said in appellant's brief:

"In reference to where his knee struck Roy Earl Jones, the witness, Ray Mason, was not consistent. He testified on direct examination by counsel for defendant as follows:

" 'A. * * * I always raised my leg up when I pushed on that and my knee struck him about right here (indicating).

" 'Q. Well, is that in the chest? A. Yes, right in the chest.'

"Then on cross examination, by counsel for plaintiff, he testified as follows, to-wit:

" 'Q. Where did your knee strike him? A. About in here (indicating).

" 'Q. You are pointing at the pit of the stomach, aren't you? A. Yes.

" 'Q. Well, is it or not? A. That is part in the chest and part in the stomach.

" 'Q. Right at the end of the chest bone, isn't it? A. Yes.

" 'Q. Let's see where that knee struck him; you think right about there (indicat-·ing on body of witness). A. Yes.

" 'Q. Right at the end of the chest bone? A. Yes.'

"That it is very material whether the blow was in the chest or in the stomach is shown by the following testimony of Dr. P. K. Smith on direct examination, by counsel for plaintiff, to-wit:

" 'Q. Doctor, a lick or blow just at the point where the breast bone stops, just above the pit of the stomach, right in the area where the breast bone is, if a man receives a blow in that portion of his body, is that blow likely or will it probably cause any injury to the lungs themselves? A. An ordinary blow or a severe blow?

" 'Q. Well, either one? A. Just an ordinary blow shouldn't produce any injury to the lungs at all because the lungs are not in the pit of the stomach. Under the tip of the breast bone is in abdomen cavity, not up in the breast cavity; the diaphragm, that is the big muscle that separates the abdomen cavity from the breast cavity; and the injury wouldn't be in the breast but in the upper abdomen.' "

The two issues referred to in the objection as being duplicitous were, first, whether Jones was struck in the chest, and second, whether or not the lick was sustained in the course of his employment. The duplicity in that respect is not complained of here, nor could it be since the evidence was undisputed that he was struck in the course of his employment. Texas Employers' Ins. Ass'n v. Coulter, Tex.Civ. App., 35 S.W.2d 1082. We do not believe the objection urged was sufficient to present the further objection argued here that the issue was duplicitous for the additional reason that it submitted two issues, namely, striking in the chest and also in the pit of the stomach. For it is well settled that objections urged to the submission of special issues must definitely point out the ground of the objection to the end that the trial court may so word the issue as to avoid such a criticism. And by Art. 2185, Rev.Civ.St., it is provided that on appeal all objections not so presented are considered as waived. 41 Tex.Jur., sect. 250, p. 1061; sect. 252, p. 1063; and many decisions there noted; Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920; Fort Worth & D. C. Ry. Co. v. Rowe, Tex.Civ.App., 69 S.W.2d 169; Southern Underwriters v. Kelly, Tex.Civ. App., 110 S.W.2d 153, and other decisions there cited.

Moreover, the ultimate issue was whether or not Jones sustained an injury to his lungs when he fell and was struck by Mason's knee. Whether the knee struck him in the chest or in the pit of the stomach were evidentiary matters pertinent to the lung injury issue, and therefore the inclusion of both of those evidentiary matters in Issue No. 1 did not render the issue subject to the objection of duplicity. 41 Tex. Jur., sect. 276, page 1107.

October 25th, 1937, was the alleged date of both injuries sustained by Roy Earl Jones. The award of the Board was dated February 21st, 1938, in general terms, with no description of the nature of injuries for which compensation was allowed. Counsel for defendants introduced proof of the filing with the Industrial Accident Board and the subscriber and the insurer, of notice of claim for compensation for the chest injury, in accordance with the requirements of Art. 8307, sect. 4a, Rev.Civ.St.

When testimony of Ray Mason, to prove the injury from strangulation, in addition to the chest injury, was offered, counsel for the insurer objected to any evidence to prove that injury, because the defendant had already introduced evidence showing a

filing with the Industrial Accident Board of claim for the chest injury, with no showing of filing with the Board of a claim for the additional injury from strangulation, and no showing that the latter claim had been passed on by the Board, and therefore the District Court was without jurisdiction to determine that claim and proof of it would be immaterial and prejudicial to the defense urged against the chest injury. The record shows that in answer to that objection, Mr. King, counsel for claimants, stated to the court that an affidavit of Ray Mason, showing that deceased had suffered both injuries, had been filed with the Board before it made the award of compensation, and that the affidavit would be introduced later. The statement of facts shows that such a purported affidavit by Ray Mason, with unfilled blanks left for signatures, and no showing of its filing with the Board, was later introduced in evidence without objection of plaintiff.

Appellant filed no verified pleading denying allegations in the defendants' answer, to the effect that they had complied with the statutory requirements to show jurisdiction of the court to determine the claim for the alleged injury from strangulation; in the absence of which, as provided by Article 8307b, Vernon's Ann.Civ.St., enacted by the 45th Legislature and effective at the date of that injury, it is presumed that all those requirements were complied with. Therefore, the point presented by appellant, that jurisdiction of the trial court to determine the claim for the alleged strangulation injury was not shown and that testimony to show such was irrelevant and prejudicial to appellant, is without merit. Nor do we believe, as insisted by appellant, that defendants' pleadings were insufficient to allege that the claim for the strangulation was duly filed with the Board, or that the statutory presumption that same was done was overcome by first filing claim for the chest injury alone, without reference to the injury from strangulation, under the doctrine announced in 17 Tex.Jur., para. 60, page 253.

■ Appellant objected to the submission of Issue No. 13, on numerous grounds, but only two of which are urged here. The first was that the general instructions given preliminary to the special issues, reading, "You shall answer each question as you find the facts to be", read in connection with Issue No. 13, was erroneous, in that it imposed upon the insurer the burden to prove by a preponderance of the evidence that Jones died solely from natural causes, while under the law the burden was upon plaintiffs to prove by a preponderance of the evidence that he did not die solely from such natural causes; and that at all events the manner of its submission was calculated to confuse the jury as to its meaning.

The following decisions cited tend to support that contention: Federal Underwriters Exchange v. Rigsby, Tex.Civ.App., 114 S.W.2d 354; Fidelity & Casualty Co. of New York v. Van Arsdale, Tex.Civ. App., 108 S.W.2d 550, writ of error dismissed; Jones-O'Brien, Inc., v. Loyd, Tex. Civ.App., 106 S.W.2d 1069; McClelland v. Mounger, Tex.Civ.App., 107 S.W.2d 901, writ dismissed by agreement.

The case of Traders & General Ins. Co. v. Burns, 118 S.W.2d 391, 393, by this court, was a suit by Burns for compensation under the Workmen's Compensation Act, for certain injuries sustained in the course of his employment by the Worth Mills. Special defenses urged by the insurer were reflected in the following special issues submitted:

" 'Question 33: Do you find from a preponderance of the evidence that the focal infection of the plaintiff, A. V. Burns, brought about by the abscessed teeth of plaintiff, was not the sole cause of any disability, if any, he may have suffered subsequent to June 23rd, 1936? Answer "It was the sole cause" or "It was not the sole cause," as you find the facts to be.' The answer was: 'It was not the sole cause.'

" 'Question 34: Do you find from a preponderance of the evidence that the injury or injuries sustained by the plaintiff, A. V. Burns, at any time prior to June 23rd, 1936 was not the sole cause of any disability, if any, the plaintiff may have suffered since June 23rd, 1936, if in fact he did suffer any disability? Answer "It was the sole cause" or "It was not the sole cause," as you may find the facts to be.' This was answered: 'It was not the sole cause.' "

In the opinion of Justice Speer, disposing of assignments of error to those issues, this was said: "Defendant's fourteenth and fifteenth assignments assert that it was error for the court to instruct the jury to answer certain issues by the use of prescribed words, adding, 'as you find the facts to be.' It is claimed such instruction contradicts the previous ex-

pression in the issue to answer from a preponderance of the evidence. It has long been a serious problem to determine in just what form a negative issue should be presented to a jury for answer. In many instances, when answered by either yes or no, such answer could be construed differently from what was intended by the jury; the Supreme Court, in Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S.W.2d 956, has indicated as an approved way the method adopted by the trial court in this case. The rule announced. by that court has been since followed by the Court of Civil Appeals in Traders & General Ins. Co. v. Snow, 114 S.W.2d 682, and we feel impelled to do the same; the assignments are therefore overruled.",

In Traders & General Ins. Co. v. Huntsman, 125 S.W.2d 431, 439, by this court, in opinion by Justice Speer, which was likewise for compensation under the Workmen's Compensation Act, this was said:.

"Propositions twenty-two to thirty-one, both inclusive, are based upon the manner in which special issues are framed, and the language used relating to their answers. The issues complained of are Nos. 4, 5, 6, 8, 9, 11, 15, 16, 18 and 19, each of which propounds questions to be answered from a preponderance of the evidence and concludes with statements to the effect, that 'You will answer "yes" or "no", as you find the facts to be.'

"The criticism urged to each is in substance: 'That said issue is on the weight of the evidence and as framed when taken in connection with the definition in the charge of the term "preponderance of the evidence" is confusing to the jury and in legal effect places the burden of proof on the plaintiff (cross defendant) to establish and secure a favorable answer to it from a preponderance of the evidence, which is a greater burden than the law imposes upon it.'

"This question was before us in the case of Traders & General Ins. Co. v. Burns, 118 S.W.2d 391, and we disposed of it as shown at page 397, adversely to the contentions of appellant here. (The application for writ of error was dismissed by the Supreme Court upon joint application of the parties.) In support of our holding in that case, we cited Southern Ice & Utilities Co. v. Richardson, 128 Tex. 82, 95 S. W.2d 956; Traders & Gen. Ins. Co. v. Snow, Tex.Civ.App., 114 S.W.2d 682. Since we decided the Burns case, supra, the Su-

preme Court has rendered an opinion in the case of Gulf C. & S. F. Ry. Co. v. Giun [131 Tex. 548], 116 S.W.2d 693, 116 A.L.R. 795, which we consider strengthens our conclusions announced in the Burns case. There are decisions by some of our Courts of Civil Appeals which support appellant's contention here and others are to the contrary. We pointed them out in the Burns case, supra, and think it unnecessary to reiterate what we there said. The assignments are overruled."

In that case, appellant's application for writ of error was dismissed by the Supreme Court, with the notation that the judgment of this court was correct; the effect of which was to overrule the decisions to the contrary on the same point relied on by appellant and noted above.

█ Another objection urged by appellant to Issue No. 13 was to the effect that it ignored the special defense pleaded and supported by testimony introduced, that the death of Jones was caused solely by streptococci sore throat and pneumonia, independently of the alleged injuries. And in connection with the objection, the court was requested to submit that defensive issue. The record shows that when that objection was made, the court said to appellant's counsel: "If you have any affirmative defensive issues that have not been submitted that you want to submit I will submit them." But appellant failed to furnish to the court any issue presenting the special defense referred to in the objection. Therefore, it is in no position to complain of the failure of the court to submit the special defense noted. Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A.L.R. 1183; Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, opinion by Justice Sharp; Riddle v. Lanier, Tex.Civ.App., 121 S.W. 2d 655; Traders & Gen. Ins. Co. v. Burns, Tex.Civ.App., 118 S.W.2d 391; Harris v. Thornton's Dept. Store, 94 S.W.2d 849, by the Court of Civil Appeals at Eastland, opinion by Justice Funderburk; Harris v. Leslie, 128 Tex. 81, 96 S.W.2d 276, in which a petition for mandamus to compel certification of same issue decided in the Thornton's Dept. Store case, on the ground of conflict with former decisions, was denied by the Supreme Court, because the opinion of the Court of Civil Appeals complained of was in harmony with the opinion of the Supreme Court in the Conley case, and therefore there was no proper

basis for issuance of the writ of mandamus—notwithstanding admitted conflicts between the Department Store decision and former decisions. Cisco & N. E. Ry. Co. v. McCharen, Tex.Civ.App., 118 S.W. 2d 844; Nolte v. Olmos Dinner Club, Tex. Civ.App., 118 S.W.2d 841; Southern Underwriters v. Sanders, Tex.Civ.App., 110 S.W.2d 1258, error dismissed; Sherwin-Williams Co. v. Delahoussaye, Tex.Civ. App., 124 S.W.2d 870, writ dismissed.

The assignments of error now under discussion are overruled.

■ Texas Employers' Ins. Ass'n v. Storey, Tex.Com.App., 17 S.W.2d 458, involved a claim for compensation under the Workmen's Compensation Act, by the widow and minor child of Claude Storey, who was killed during the course of his employment by the Texas Power & Light Company, who carried insurance under the Act with the Texas Employers Ins. Ass'n. The only issue determined by the Commission of Appeals was the amount of compensation to which the claimants were entitled. As shown in the opinion, Storey was employed on a salary at $145 per month and had worked about 368 days, counting over time, during the year preceding his death, for which he had earned $1,750. It was held that compensation to the claimants should not be computed under either subdivision 1 or 2 of Art. 8309, Rev.St., because those provisions were applicable only to a statutory year of 300 days; but under subdivision 3 of that Art., citing Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W.2d 553. And compensation was then fixed by determining the annual average wages of Storey and dividing the same by 52, to determine his average weekly wage, under subdivision 5 of the same Art., and then allowing a recovery of 60 per cent thereof, but not to exceed the maximum of $20.00 per week, for 300 weeks, fixed by sect. 8 of Art. 8306. In that case the trial court found that Storey's average weekly wage for the year preceding his death was $33.84, which was determined by dividing the total annual wage of $1,759.86 by 52, as provided by subdivision 5 of Art. 8309. Sixty per cent of that sum amounted to $22.30, but as $20 per week for 300 weeks was the maximum that could be allowed under Sect. 8 of Art. 8306 of the Statute, the trial court allowed compensation in the sum of $20 per week for 300 weeks. That judgment of the trial court was affirmed by the Court of Civil Appeals, as shown in Texas Employers' Ins. Ass'n v. Storey, 7 S.W.2d 913, and the judgment of the latter court was likewise affirmed by the Supreme Court.

The judgment in the case at bar awarded compensation in accord with those decisions, on findings by the jury, computed as follows. During the year immediately preceding his death, Jones worked for 362 days at the same work he was employed when injured, and in the same vicinity, at an average daily wage of $6.15, which aggregated $2,226.30 for the entire year. That annual wage, divided by 52, as provided by subdivision 5 of Art. 8309, amounted to $42.81, which was his average weekly wage, sixty per cent of which was $25.686. The latter sum was $5.686 in excess of $20, the maximum fixed by Art. 8306, sect. 8. The amount of compensation awarded to Mrs. Pauline Jones, Gary Jones and Bert King, for attorney's fees, all aggregated only $16.66⅔ per week, for 360 weeks, which was less than the $20 maximum to which the court found the claimants were justly entitled.

The cross action was based on allegations of the facts so found by the jury, which showed that compensation could not be fixed under either subdivision 1 or 2 of Art. 8309, but should be determined under subdivision 3 in connection with subdivision 5 of the same article, as settled by the decision in the Storey case, supra. And since the findings of the jury are supported by competent evidence, there is no merit in appellant's contention that those findings are without support of pleadings or evidence.

■ By the 17th proposition, complaint is made of the court's refusal of appellant's request to define the term "substantially the whole year", used in special issue No. 9; the request being made as an objection to that issue. Petroleum Casualty Co. v. Williams, Tex.Com.App., 15 S.W.2d 553, 555, is cited, in which this was said: "We are further of the opinion that substantially a year, within the meaning of subdivisions 1 and 2 [of Art. 8309] is exactly 300 days or close to, or near to 300 days. It may be slightly more than 300 days or slightly less than 300 days. That is to say substantially a year means a year or about a year, or so near a year as to be a year for all practical purposes."

But, as shown above, recovery here was under subdivisions 3 and 5 of the statute,

and not under subdivisions 1 and 2, as in that case. And even in that case, whether or not the term should be defined to the jury was not presented or discussed. Compensation allowed in this case was upon an average weekly basis, determined as a matter of law under subdivisions 3 and 5 of Art. 8309, by dividing the annual average wage by 52. And proposition No. 17 presents no complaint of failure to define "average annual wages" or "average weekly wages". Hence, proposition No. 17 is without merit.

Other objections to failure to define the terms last noted are briefed by appellant, but without any proper basis therefor in any proposition relied on to show reversible error.

■ The concluding statement in appellees' cross action following allegations of filing of the claim with the Industrial Accident Board reads: "From which said award the said Southern Underwriters appealed in this proceeding to have same set aside, annulled and vacated.".

The court overruled plaintiff's exception to that allegation.

When the case was called for trial and after the insurance carrier had dismissed its appeal from the decision of the Accident Board, counsel for claimants read to the jury the pleading presenting their cross action, including the allegation above, and in connection therewith stated to the court, in the presence of the jury, that claimants were styled "defendants" on the docket because the insurance company had appealed from the decision of the Accident Board and was styled "plaintiff".

Immediately thereafter the jury was retired, and, as appears in a bill of exception shown in the statement of facts, in the absence of the jury, the insurer presented its oral motion for an order of mistrial, and for passing the case for another trial, on the ground that the reading of the pleading and statement of opposing counsel to the court in connection therewith, which had already occurred in the presence of the jury, as shown by the stenographer's notes of the court reporter, would be prejudicial to the insurance company, because thereby they were in effect told that the Board had awarded compensation for the death of Earl Jones. And error has been assigned to the action of the court in overruling that motion, citing: Millers' Indemnity Underwriters v. Hughes, Tex.Civ.

App., 256 S.W. 334; Commercial Standard Ins. Co. v. McGee, Tex.Civ.App., 40 S.W. 2d 1105; Fidelity Union Casualty Co. v. Klatt, Tex.Civ.App., 47 S.W.2d 417; Indemnity Ins. Co. v. Garsee, Tex.Civ.App., 54 S.W.2d 817; Texas Employers' Ins. Ass'n v. Phillips, Tex.Civ.App., 62 S.W.2d 313.

Those decisions announce the general rule that in the trial of a case on appeal from a decision of the Accident Board, it is prejudicial error to permit the jury to be informed that the Board had allowed compensation to be paid by the insurance company.

However, in defendant's cross action it was alleged that the Industrial Accident Board had made an award of compensation to defendants, from which plaintiff had appealed, and a copy of the award was attached to defendant's pleadings as an exhibit. The bill of exception recites this finding by the trial judge as one of the grounds for overruling the motion: "I want the record to show that the exhibit attached to the pleadings or the cross action was not read to the jury, nor was the jury informed in any way what amount of award was granted by the Board. Let the record show that no objection was made to what was in the cross pleadings until after the entire pleading was read to the jury."

We believe it clear that plaintiff's failure to object to reading of the pleadings until they had been read to the jury in their entirety, as found by the trial judge, was a waiver of the right to have the court declare a mistrial; and the statement by counsel, in the hearing of the jury, after reading the pleadings, that the reason why the claimants were denominated defendants in the case was that plaintiff had appealed from the award by the Board, was clearly indicated by the pleadings; as was true, also, of the concluding allegation in the pleadings quoted above, to which plaintiff excepted.

Accordingly the assignment to the overruling of the motion for an order of mistrial is overruled.

■ Appellant's twenty-fourth and twenty-fifth propositions are as follows:

"Twenty-fourth Proposition. The trial court erred in entering judgment against the plaintiff as a legal entity under the name of The Southern Underwriters instead of sustaining plaintiff's general demurrer and granting plaintiff's motion for

an instructed verdict, because there is neither pleading nor proof that the plaintiff is a corporation or such other legal entity as is capable of being sued as such under the name of The Southern Underwriters."

"Twenty-fifth Proposition. The trial court erred in overruling plaintiff's general demurrer to defendants' answer because such answer contained no allegation that the defendants, Pauline Jones and Gary Jones, are the sole beneficiaries of Roy Earl Jones under the terms and provisions of the Workmen's Compensation Law."

The original petition of the insurer filed in the District Court, seeking an annulment of the award against it by the Accident Board, embodied this allegation: "Now comes Southern Underwriters, an insurance association, organized and created under and by virtue of the laws of the State of Texas, having its principal office in Houston, Harris County, Texas, who shall hereafter be called plaintiff."

That petition was dismissed by said plaintiff, but the cross action, seeking a recovery against it, was filed before its dismissal. If the cross action had been tried before such dismissal, the claimants who filed as defendants would not have been required to prove that plaintiff was duly incorporated as it had alleged. After such dismissal, the defendants had the same right, without filing a new cross action, with allegations of the same facts alleged in plaintiff's petition, which it had later dismissed, since the order of dismissal was made with the express provision that it was without prejudice to their rights. McElyea v. Parker, 125 Tex. 225, 81 S.W.2d 649; Northern Texas Traction Co. v. City of Polytechnic, Tex.Com.App., 236 S.W. 73; Jones v. Wagner, Tex.Civ.App., 141 S.W. 280. And an exhibit attached to the abandoned pleading may also be looked to in rendering judgment. Port Huron Engine & Thrasher Co. v. McGregor, 103 Tex. 529, 131 S.W. 398; Fuqua v. Mapes, Tex.Com. App., 57 S.W.2d 97. And in the same petition, the insurer alleged that the "deceased (Earl Jones) left surviving as his sole and exclusive legal beneficiaries, Pauline Jones, a widow, and Gary Jones, minor child." Testimony of Pauline Jones, which was undisputed, was sufficient to support those allegations, at all events. And sect. 8a of Art. 8306 provides for distribution of compensation for death of an employee to the widow and children of the deceased, according to the laws of descent and distribution of this State. Hence, propositions Nos. 24 and 25 are both without merit.

Proposition 26 presents the contention that the court was without lawful authority to enter judgment in favor of the minor, Gary Jones, because no guardian ad litem was appointed to represent him. It is admitted that Pauline Jones, the mother, sued for him as his next friend, as provided by Art. 1991, Rev.Civ.St., but it is argued that there might be a possible conflict of interests between the mother and child, which would require the appointment of a guardian ad litem for the child, under Art. 2159, Rev.Civ.St., if a minor is made a defendant; citing the decision in City of Dallas v. Crawford, Tex.Civ.App., 222 S.W. 305. But in that case the conflicting interests of mother and child were expressly alleged in the pleadings. The argument of possible conflicting interests of mother and child in this case is based on an inference that Pauline Jones had abandoned her husband, drawn from her testimony that at the time of the death of her husband she, with her minor child, Gary Jones, was living in Vernon, and her husband, Earl Jones, was living in Wichita Falls, where he was working at the time of his death, and which abandonment, if it had occurred for more than three years prior to the death of Earl Jones, would have entitled the minor to the whole of the compensation, under provisions of Art. 8306, subdivision 8a, Rev.Civ. St. A sufficient answer to this assignment is that the undisputed testimony of Pauline Jones was sufficient to refute and overcome such an inference of abandonment. Nor was that issue presented in appellant's pleadings, or submitted or requested to be submitted to the jury.

For the reasons noted, all assignments of error are overruled, and the judgment of the trial court is affirmed.

On Motion for Rehearing.

PER CURIAM.

The motion for rehearing by plaintiff in error is by us overruled.

And it appearing to the court that the plaintiff in error, the Southern Underwriters, has complied with the order of this court, dated February 9, 1940, in which it was required to file an additional supersedeas bond, and that such bond has been approved by the clerk of this court,

It is therefore ordered that the former judgment of this court, dated December 22,

1939, affirming the judgment of the trial court, be and the same is hereby amended so as to award the defendants in error, Pauline Jones, Gary Jones and Bert King, recovery of the amounts adjudged below of and from the plaintiff in error and its surety on its new and additional supersedeas bond, towit, Lloyds Casualty Insurer, together with judgment against said last named surety for all costs.